101 N.J. Super. 435 (1968)
244 A.2d 531
STATE OF NEW JERSEY, PLAINTIFF,
v.
LOUIS JOSEPH LIPPOLIS, DEFENDANT.
Superior Court of New Jersey, Law Division  Criminal.
Decided June 17, 1968.
*437 Mr. William G. Lashman for defendant (Lashman & Kupperman, attorneys).
Mr. Solomon Forman, Assistant County Prosecutor for plaintiff (Mr. Robert N. McAllister, County Prosecutor of Atlantic County, attorney; Mr. Ernest M. Curtis, of counsel and on the brief).
RIMM, J.C.C. (temporarily assigned).
This matter is before the court on motion for dismissal of indictment No. 63-63-S on behalf of defendant Louis Joseph Lippolis. The State has made cross-motion for an extension of the time to permit it to proceed against defendant.
The parties are in accord as to the facts. On November 12, 1963 defendant was indicted for murder by the Atlantic County grand jury. Thereafter, defendant became a fugitive from justice and later was located as an inmate of the Pennsylvania State Correctional Institution of Huntingdon, Pennsylvania. On May 5, 1967 the Atlantic County Prosecutor received from the superintendent of this institution a letter and forms approved by the Council of State Governments under the Interstate Agreement on Detainers Act, N.J.S. 2A:159A-1 et seq. This letter notified the prosecutor that *438 defendant requested disposition of the pending indictment. The following forms were enclosed: Form No. 2, "Inmate's Notice of Place Imprisonment"; form No. 3, "Certificate of Inmate Status," and form No. 4, "Offer to Deliver Temporary Custody."
On June 2, 1967 the Atlantic County Prosecutor forwarded to the superintendent of the Pennsylvania State Correctional Institution Form No. 7, "Prosecutor's Acceptance of Temporary Custody," offered in connection with a "Prisoner's Request for Disposition of a Detainer," in which he advised the superintendent that he accepted temporary custody of the prisoner and that he proposed to bring defendant to trial within the time specified by the Interstate Agreement on Detainers.
Dorothy E. White, principal clerk-stenographer to the prosecutor, prepared form No. 6, "Agreement on Detainers, Evidence of Agents' Authority to Act for Receiving State," and also prepared a transmittal letter to be forwarded at the proper time with Form No. 6 to the Commissioner, Department of Institutions and Agencies. The date and approximate hour of return of defendant to New Jersey was left blank on form No. 6 because the necessary and requested information was not sent to the prosecutor. Therefore, before the date of trial could be inserted, the Atlantic County Prosecutor's office would have to ascertain if the prisoner was still an inmate of said institution and still available for trial. Accordingly, on September 8, 1967 Miss White had a telephone conversation with Curtis C. Carson, records officer of the Pennsylvania State Correctional Institution, and stated that she wanted to know if defendant was still available for trial so that she could complete form No. 6 by inserting the date and approximate hour of trial. This form was to be forwarded to New Jersey's administrator, Lloyd W. McCorkle, Commissioner of Department of Institutions and Agencies, (under the Interstate Agreement on Detainers Act) for his approval and designation to the warden of said institution of the two agents who were to return the accused *439 to this State for trial. This certification by the New Jersey administrator is found at the bottom of form No. 6.
Carson informed Miss White that the accused was scheduled for a hearing in Philadelphia on September 11, 1967 and thereafter would be returned to the institution. Carson stated that he could not determine the length of time that defendant would remain in Philadelphia, nor when he could be available to be returned to New Jersey for trial. Miss White stated that Carson promised to write a letter to her informing her when the accused would be available for trial. Carson said he does not recall promising that he would further advise Miss White when defendant would be available for trial, and also said that it is possible that he did so advise her.
Never having received notification as to defendant's availability, Miss White telephoned Carson on November 14, 1967 to ascertain if defendant was available. She was advised that the accused had been returned from Philadelphia to the institution and was available, but he offered no explanation for his failure to notify her as he had promised. The prosecutor took no further action until he was served December 12, 1967 by defendant with a notice of motion for an order dismissing the indictment. The next day the prosecutor filed a notice of cross-motion for a continuance of trial date. On December 22, 1967 the court ordered a continuance until briefs were received and the matter determined.
Defendant contends that the State failed to comply with N.J.S. 2A:159A-3(a) which requires that defendant "be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment * * *." It is urged that noncompliance with this statute violates defendant's right to a speedy trial, guaranteed by N.J. Const., Art. I, par. 10. Defendant claims detriment resulting *440 from the detainer being placed against him, not being able to work except under maximum security, and not being able to earn proper credit for time served due to remaining under maximum security, thereby losing credit or time off from his eventual date of discharge from the Philadelphia prison system.
The State contends that (1) the 180-day period prescribed by N.J.S. 2A:159A-3(a) was tolled because defendant was unable to stand trial as provided by N.J.S. 2A:159A-6(a); (2) defendant is estopped from claiming benefit under the provision for running of the time period in N.J.S. 2A:159A-3(a), and (3) a strict interpretation of the limitation of the 180-day time period would be contrary to the public policy of New Jersey since there is no statute of limitations in this State for murder.
The issue, generally, is whether the 180-day period was tolled because defendant was "unable to stand trial, as determined by the court having jurisdiction of the matter," as provided in N.J.S. 2A:159A-6(a). The court is, therefor, required here to decide whether defendant was "unable to stand trial."
Before considering the merits, the context of the Interstate Agreement on Detainers should be outlined to facilitate a better understanding of those sections of the act averted to heretofore. New Jersey became a party to the Agreement on April 18, 1958 by an act of the Legislature. L. 1958, c 12 (N.J.S. 2A:159A-1 et seq).
Article I of the Interstate Agreement (N.J.S. 2A:159A-1) states its purpose and object as follows:
"The party States find that charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party States and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints. The party *441 States also find that proceedings with reference to such charges and detainers, when emanating from another jurisdiction, cannot properly be had in the absence of cooperative procedures. It is the further purpose of this agreement to provide such cooperative procedures."
The act contemplates that its machinery is invocable either by the prisoner, under Article III (N.J.S. 2A:159A-3), or by the prosecutor of a receiving State, under Article IV (N.J.S. 2A:159A-4). Time periods for culmination of these procedures by trial of the pending charges are stated in the respective articles, and sanctions regarding a default claimed by defendant can be found in Article V (N.J.S. 2A:159A-5). Where the act is invoked by a prisoner, Article III(a) (N.J.S. 2A:159A-3(a)) provides that
"* * * he shall be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information on complaint; provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance."
Sanctions are provided in Article V (c) (N.J.S. 2A:159A-5(c)):
"If the appropriate authority shall refuse or fail to accept temporary custody of said person, or in the event that an action on the indictment, information or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in Article III or Article IV hereof, the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect."
The only express provision for tolling the time periods specified in Articles III and IV is that stated in Article VI (N.J.S. 2A:159A-6, supra).
This legislation has been discussed in previous opinions in New Jersey, but none is determinative of the question *442 before this court. See State v. Masselli, 43 N.J. 1 (1964); State v. Mason, 90 N.J. Super. 464 (App. Div. 1966); Carrion v. Pinto, 79 N.J. Super. 13 (App. Div. 1963); State v. Chirra, 79 N.J. Super. 270 (Law Div. 1963); State v. West, 79 N.J. Super. 379 (App Div. 1963); see also, People v. Esposito, 201 N.Y.S.2d 83 (Cty. Ct. 1960). It is settled law, however, that the purpose of this statute is remedial and it should be accorded liberal construction in favor of prisoners within its purview. State v. Mason, supra, at p. 470; State v. Chirra, supra, at 277; State v. West, supra, at p. 384; People v. Esposito, supra, 201 N.Y.S.2d, at pp. 88-89.
In State v. Masselli, supra, at p. 12, the Supreme Court reserved the question of whether the pendency of defendant's motion to dismiss operated to toll the running of the time period under the provision of N.J.S. 2A:159A-6(a) that there shall be tolling "whenever and for as long as the prisoner is unable to stand trial."
In State v. Mason, 90 N.J. Super. 464-473 (App. Div. 1966), the court held that defendant's withdrawal of consent to extradition could not toll the running of the 180-day statutory period. In that case the prosecutor wrote to the warden on May 13, 1959 that he would accept temporary custody of the prisoner. He later inquired as to the exact day the prisoner would be available and was advised that said prisoner could be picked up any week day. The prosecutor then informed the warden that he could not accommodate defendant before the September session of court because of the crowded condition of the court calendar. Having originally requested disposition of his case on January 22, 1959, defendant wrote the prosecutor that he no longer consented to extradition because of the lapse of 180 days. Judge Conford held that where the 180-day period, within which, generally, prosecution should be commenced, had expired without commencement of trial and no continuance had been sought or granted, the indictment was subject to dismissal on prisoner's motion. The case differs factually from the case at bar in that the *443 Atlantic County Prosecutor took no affirmative action between September 8, 1967 and November 14, 1967. The 180-day period from May 5, 1967 had expired on November 1, 1967, and no continuance was sought by the prosecutor until December 13, 1967. N.J.S. 2A:159A-3(a).
In State v. Chirra, 79 N.J. Super. 270 (Law Div. 1963), the prosecutor first made a demand on the State of New York for custody of the prisoner in April 1960 but then announced that he did not intend to take custody until September 1960. No further action was taken until renewed demand was made in December 1962. Defendant in that case had been available to the State of New Jersey for all but seven months of the intervening period. The indictment was dismissed with the caveat that "[r]espect for the purpose of the statute requires that the adverse consequences of any failure or refusal so to act be visited upon the prosecution and not the prisoner" (at p. 278).
A New York court dismissed an indictment where the prisoner serving sentence in a New Jersey prison noticed the Queens District Attorney to bring him to trial, but the District Attorney took no action for more than 180 days after service. This was held even though the New Jersey prison keeper failed to accompany defendant's notice with a certificate as to details of defendant's commitment and an offer to deliver temporary custody to the District Attorney. People v. Esposito, 201 N.Y.S.2d 83 (Cty. Ct. 1960).
As was stated in Mason, supra, at p. 473, "Once the 180-day period has expired without trial of the indictment (or previous grant of continuance thereof for good cause) the Act in mandatory language dictates its dismissal `with prejudice'. N.J.S. 2A:159A-5(c)." In the instant case the 180-day period commencing May 5, 1967 expired November 1, 1967. The 67-day period between September 8, 1967 and November 14, 1967 during which the prosecutor asserts absence of knowledge as to the availability of defendant possibly may have warranted a discretionary continuance of trial beyond the 180 days if applied for before the expiration *444 thereof, but this, per se, does not toll the running of the 180-day period. Moreover, the prosecutor did not proceed against defendant in any manner for the period from November 14, 1967 to December 13, 1967, when he finally sought a continuance after the defendant moved to dismiss the indictment.
"To hold that the prosecutor may permit the 180-day period to expire, and then at any time thereafter when the prisoner moves to invoke the sanction of dismissal, resist that application by a request for extension nunc pro tunc of the period, would be to eviscerate a vital element of the statutory scheme designed to effectuate its salutary policy. Cf. State v. Chirra; People v. Esposito, both supra. (sic). Strict enforcement of the literal terms of the statute in this regard visits no hardship on prosecutors, since they may make timely requests for necessary continuances, and at the same time it stimulates prompt and expeditions disposition of the class of indictments within the legislative concern." State v. Mason, supra, at p. 474.
As previously noted, nothing can toll the running of the 180-day period except inability of the prisoner to stand trial if so determined by the court, N.J.S. 2A:159A-6(a), or any necessary or reasonable continuance pursuant to N.J.S. 2A:159A-3(a).
In Mason, supra fn. 2, p. 473, the court indicated that were it material, they would hold that the warden's delay in forwarding tender of the prisoner's original request did not stop the running of the 180-day period. In the case at bar the 67 days between September 8, 1967 and November 14, 1967 and the explanation by the State that this delay resulted from the absence of notice from the Philadelphia officials is unreasonable and does not satisfy this court that "the prisoner is unable to stand trial as determined by the court having jurisdiction of the matter," N.J.S. 2A:159A-6(a). The burden of compliance with the requirements of the Agreement is placed entirely upon the law enforcement officials involved. The inmate-prisoner has no power of supervision or control over their performance; neither, for that manner, has the prosecutor, but he is better able to establish *445 liaison with the prison officials for the purpose of seeing that what should be done is done, in accordance with the requirements of the law. Respect for the purpose of the Agreement requires that the adverse consequences of oversights by law enforcement officials, as here, be visited upon the prosecution and not upon the prisoner. In that way the aim of the Agreement is implemented by inspiring the law enforcement officials to perform their duties diligently and effectively. "They are not likely to be so inspired if the prisoner is made the victim of their contributory inaction." People v. Esposito, 201 N.Y.S.2d 83, 90 (Cty. Ct. 1960).
In regard to the State's contention that the indictment should not be dismissed because there is no statute of limitations on murder in New Jersey, no mandatory or persuasive authority can be found. However, it has been held that an indictment for murder may be dismissed for the prosecutor's failure to afford defendant a speedy trial at least six months following the return of the indictment, in accordance with R.R. 3:11-3. State v. Coolack, 43 N.J. 14, 16 (1964); State v. Brockington, 89 N.J. Super. 423, 430-431 (App. Div. 1965); State v. Von Atzinger, 81 N.J. Super. 509, 513 (App. Div. 1963).
Concerning the State's contention that the prisoner is estopped to claim benefits of the Interstate Agreement because the superintendent of the Philadelphia prison was deemed to be his agent, research has not disclosed any authority in law to substantiate such an argument and it would be unreasonable that defendant suffer the consequences of dilatory action by law enforcement officials. As was pointed out in People v. Esposito, 201 N.Y.S.2d 83, 90 (Cty. Ct. 1960), the prisoner has no control over these officials and should not be penalized for their actions or absence thereof. In People v. Masselli, 17 App. Div.2d 367, 234 N.Y.S.2d 929, 933 (App. Div. 1962), the chief clerk of Clinton Prison, where defendant was an inmate, failed to forward the prisoner's notice and request for disposition of indictment to the Bronx District Attorney, and as a result defendant was not *446 brought to trial within the 180 days required by New York statute, C.C.P. § 669-a. The court stated the issue in that case is whether * * * "the consequences of such omission [should] be visited upon the defendants so as to deprive them of the valuable rights sought * * *. We think not." The opinion continues.
"The obvious purpose of the section was to give prisoners the option of requiring that pending untried indictments be disposed of expeditiously. Such right was denied these defendants. The failure of the district attorney to be apprised of the notice and request is of no consequence where it was due to the failure of the correction authorities to perform a duty enjoined upon them by law. The Correction Department officials  as well as the district attorney  are agents and representatives of the People of the State of New York. As between the defendants and the sovereign, the burden of such omission should fall on the latter. To hold otherwise could well render the statute ineffectual and defeat the salutary purpose the legislature sought to effect (See People v. Esposito, Co. Ct., 201 N.Y.S. 2d 83, 88 [sic]." (234 N.Y.S.2d, at p. 933, emphasis added).
The New York Appellate Division held that since the district attorney knew of the whereabouts of the prisoner, he could, if he wished, use such knowledge to make inquiry at the correctional institution to determine whether the inmate served or offered to serve a notice and request for disposition of his indictment pursuant to statute, and although the statute imposed no obligation on the district attorney to make such inquiry, his failure to do so could, by mere passage of time, result in a dismissal of the indictment under C.C.P. § 668..
The right to a speedy trial as guaranteed by N.J. Const., Art. I, par. 10, is the right to move for such a trial and to have the indictment dismissed after the State fails to proceed at a time for trial fixed by the court. State v. Coolack, supra, at p. 16; State v. Smith, 10 N.J. 84, 93 (1952). In the case at bar no time was fixed for trial and defendant was not brought to trial within the 180 days required by N.J.S. 2A:159A-3(a). This court will not *447 accept the contention that the 180-day period was tolled for the period between September 8, 1967 and November 14, 1967 on the theory that defendant was unavailable for trial. The court finds that he was available for trial except for a very short period for his appearance in court in Philadelphia, and the time period was not tolled pursuant to N.J.S. 2A:159A-6(a). Under N.J.S. 2A:159A-3(a) the prosecutor could have moved for a continuance before November 1, 1967, the last of the 180 days, but he did not. Defendant will not be made to bear the adverse consequences in contravention of the remedial policy of N.J.S. 2A:159A-1 et seq. While it might be said that criminals should not go free merely because of the blunder of prison authorities, the language of the United States Supreme Court in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), appears to furnish the answer:
"The criminal goes free, if he must, but it is the law that sets him free. Nothing can destroy a government more quickly than its failure to observe its own law, or worse, its disregard of the charter of its own existence." (at p. 659, 81 S.Ct. at p. 1694)
Accordingly, defendant's motion for dismissal of indictment No. 63-63-S is granted and the State's cross-motion denied.