107 N.J. Super. 137 (1969)
257 A.2d 705
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
LOUIS JOSEPH LIPPOLIS, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 15, 1969.
Decided October 9, 1969.
*139 Before Judges CONFORD, COLLESTER and KOLOVSKY.
Mr. Solomon Forman, Assistant Prosecutor, argued the cause for appellant (Mr. Robert N. McAllister, Jr., Atlantic County Prosecutor, attorney; Mr. Ernest M. Curtis, Assistant Prosecutor, of counsel and on the brief).
Mr. Richard Newman, Deputy Public Defender, argued the cause for respondent (Mr. Stanley C. Van Ness, Public Defender, attorney).
The opinion of the court was delivered by CONFORD, P.J.A.D.
The State appeals from the dismissal by the Superior Court, Law Division, of an indictment for murder against defendant, pursuant to the act *140 effectuating the Interstate Agreement on Detainers, L. 1958, c. 12 (N.J.S.A. 2A:159A-1 to 15). The dismissal was by reason of the State's failure to bring defendant to trial within 180 days of his formal request therefor, as required by the act failing grant by the court of a continuance for good cause or tolling of the 180-day period for inability of defendant to stand trial.
The facts and circumstances, as well as the reasoning of the Law Division in support of its action, are fully set forth in Judge Rimm's opinion, State v. Lippolis, 101 N.J. Super. 435 (1968), to which we herewith refer.
The factual statement of the Law Division may be amplified to the following extent. (1) Defendant was apparently unable to stand trial in New Jersey from September 11 to September 21, 1967, having been in attendance at a hearing in Philadelphia during that period. (2) While the Pennsylvania prison official to whom Miss White, principal clerk-stenographer in the Atlantic County Prosecutor's office, spoke on September 8, 1967 concerning defendant's availability for trial, admitted it was possible he told her that he would inform her in writing when defendant was available for trial, he averred that it was unlikely that he so advised her, since it was the practice of the office not to do so but to put other states having detainers on prisoners on continual inquiry for such information, the number of such detainers at any given time being too numerous to afford such service.
The crux of the case is whether the prosecutor's motion for "continuance" of the 180-day period (N.J.S.A. 2A: 159A-3(a)) was out of time. On a straight calendar basis, that period expired November 1, 1967. Adding the ten days in September 1967 when defendant was presumably unable to be tried in New Jersey because of the Philadelphia engagement (N.J.S.A. 2A:159A-6(a)) would cause the 180-day period to expire November 11, 1967. The prosecutor sought no continuance until December 13, 1967, that action having been triggered by defendant's motion for dismissal noticed the day before.
*141 The State has not, below or here, challenged the principle we laid down in State v. Mason, 90 N.J. Super. 464, 474 (1966), that a prosecutor may not defeat a motion for dismissal by letting the 180-day period expire and seeking a continuance subsequently, after the motion for dismissal has been filed. It argues, instead, that the prisoner should be deemed to have been "unable to stand trial," within N.J.S.A. 2A:159A-6(a), and the statutory period therefore tolled, between September 8, 1967, when Miss White had her first conversation with the Pennsylvania prison official, and November 14, 1967, when, on her renewed inquiry, she was informed by him that defendant was available for trial. In addition to the trial court's reasons for rejecting this contention (101 N.J. Super., at 444-445) we point out, as noted above, that the record herein indicates that defendant was actually unable to stand trial in New Jersey, if at all, only from September 11 to September 21, 1967.
The State's real position in reference to this point is that defendant should be deemed to have been constructively unable to stand trial during the 67-day period claimed because the Atlantic County Prosecutor could justifiably rely on the absence of notice by the Pennsylvania authorities after September 8 of defendant's availability. It is our view, however, that nothing but defendant's actual inability to stand trial can toll the statute under the section cited. The prisoner cannot be saddled with the consequences of misunderstandings between the representatives of the two states. To the cases interpreting the legislative enjoinder of liberal construction of the act (N.J.S.A. 2A:159A-9) as calling for absolving prisoners from defaults of officers, cited in State v. Mason, supra (90 N.J. Super., at 470), add People v. Masselli, 17 A.D.2d 367, 234 N.Y.S.2d 929, 934 (App. Div. 1962). Defendant satisfied the statutory prerequisite of action on his part by causing notice of demand for disposition of the indictment to be served on both the prosecutor and the County Court. The Pennsylvania officials were not his agents in the sense that any fault by *142 them in communication with the prosecutor's office could operate to sacrifice his rights, particularly in circumstances like these, where the prosecutor's office simply let the 180-day period go by without at least one final renewal of inquiry, which, if made, would have revealed the defendant's availability for trial before expiration of the period. See also 101 N.J. Super., at 445-446.
The State argues, finally (it does not appear to have made this contention below), that since there is no statute of limitations for the crime of murder, the interstate detainer act should not be read to comprehend dismissals of indictments for that offense. We cannot agree. The pertinent section deals with the pendency of "any untried indictment * * * on the basis of which a detainer has been lodged against the prisoner" (Art. III). There is no exception for murder indictments. The general public policy for trial of all criminal indictments  murder and otherwise  bows to the express legislative determination, reflected by the enactment of the interstate agreement on detainers, that the strong public policy against neglecting indefinitely the disposition of indictments against persons incarcerated out-of-state shall be implemented by effective sanctions such as dismissals with prejudice to the extent specified by the statute. Indeed, the length of a prison term for murder potentially confronting a prisoner indicted therefor but presently serving a sentence for another crime makes the objectives of the act (N.J.S.A. 2A:159A-1) peculiarly apposite in such case. Unless this is to be another instance of "hard cases making bad law," the matter should be treated just as though any run-of-the-mill indictment were involved.
The foregoing would suffice to dispose of this appeal were it not for the position taken in the dissent (not argued by the State) that State v. Mason, supra, should be overruled to the extent that it precludes the grant of continuances not sought by the State until after the 180-day period has run and the defendant has moved for dismissal.
*143 It is said that the State's strong interest in prosecuting criminal indictments and the absence of prejudice to defendant suggest a legislative intent to allow extensions of time for trial moved within a reasonable time after expiration of the 180-day period fixed by Article III. We made the point in Mason that to accept such a proposition, particularly where the defendant's motion to dismiss has preceded the motion for continuance (usually activating it), would tend to defeat the salutary objectives of the act (90 N.J. Super., at 474). We shall return to this thesis, but we here point out that the language of the statute in this connection tends to verify a construction comporting with the evident underlying policy. Article III, after mandating trial within 180 days after demand, contains a proviso permitting the court "for good cause * * * [to] grant any necessary or reasonable continuance" (emphasis ours).
A continuance is the adjournment or postponement of an action pending in a court to a subsequent date. 17 C.J.S. Continuances § 1, p. 373. The term was obviously used here advisedly in the stated sense, the continuance being from a trial date statutorily mandated for no later than the expiration of the 180-day period. The action of continuing the matter is thus plainly contemplated for determination at or prior to the last day specified for trial in the absence of a continuance. To speak of "continuing" a matter set for trial no later than November 1 (or 11) by court action on December 13 is a misnomer which should not be attributed to the draftsmen of this act, particularly when the policy and purposes of the act would be subverted by such an interpretation, as we held in Mason. Such action is more in the nature of absolving a default.
Requiring the continuance to be requested prior to the expiration of the period, moreover, keeps control of the trial date in the hands of the court. On the other hand, ratifying a lapse by the prosecutor by an extension nunc pro tunc, purportedly for "good cause," but actually attributable to the prosecutor's overlooking or inattention to the statutory *144 requirement, renders the fortuitous period of the prosecutor's inattention the measure of the defeat of effectuation of the statutory policy that the indictment be tried, basically, within 180 days, or dismissed. If the trial court has the power, it will in practice be loath to deny almost any application for validation of a prosecutor's lapse, and the policy of the statute will suffer inevitable erosion.
Another obvious setback to policy inherent in the dissenting position is that it would encourage the prisoner's delaying his motion to dismiss after the 180 days until a time late enough to prevent the State's counter-motion for a "continuance" from being considered by the court as "reasonable." Clearly, a defendant prima facie entitled to an immediate dismissal under the act should not be placed in the position of requesting it at his peril.
In short, every consideration geared to effective implementation of the policy of the act conduces toward reaffirmation of the rule of Mason. In view of the division of the Court in this case, it is appropriate to remind ourselves of the serious disadvantages of prisoners serving a term in one state but under detainer for untried indictments of another. This situation, relief of which is the heart of the policy of the interstate act, has been cogently summarized by Mr. Justice Stewart in Smith v. Hooey, 393 U.S. 374, 378-380, 89 S.Ct. 575, 577, 21 L.Ed.2d 607 (1969).[1] See *145 also Note, 18 Rutgers L. Rev. 828, 833-34 (1964); Note, 77 Yale L.J. 767, 769-71 (1968).
Lastly, the incidence of absence of prejudice to defendant in the court's allowing extensions of time not requested by the prosecutor within the 180 days, mentioned in the dissent, is quite irrelevant to the scheme and objectives of the act. The Legislature adopted the dismissal sanction not because a prisoner would be prejudiced at trial if trial were delayed more than 180 days after demand but because such a sanction for failure to try defendant within a fixed, reasonable period of time after demand was regarded as essential to produce general compliance with the statutory mandate. The sanction is a prophylactic measure to induce compliance in the generality of cases.
The 180-day period is merely the statutory analogue to the date fixed by the court (in nonstatutory cases) for trial of an indictment upon demand of a defendant for a *146 speedy trial, where the State's failure to move the trial on that date results in dismissal of the indictment. State v. Coolack, 43 N.J. 14, 16 (1964). The dismissal there is a comparable sanction to enforce the constitutional right to a speedy trial. In such a case absence of prejudice is also irrelevant.
We conclude with the observation that even if the trial court here had jurisdiction to exercise discretion in passing on the belated request for extension of time from the prosecutor, the instant case does not demonstrate justifying circumstances. As seen above, on such an application the contest is not simply between the interests of society in processing an indictment through trial and those of a defendant whose trial has been somewhat delayed. The choice is between compelling that defendant to go to trial and making the interstate agreement an effective instrumentality for inplementation of its policy by forceful illustration to all the State's prosecutors of the consequences of their failure to follow it. That the prosecutor here did fail to follow it is evident.
We had decided Mason almost a year before the determinative events in the instant matter. There is no indication that the prosecutor or any legal assistant calendared the date of expiration of the 180-day period. Accepting the affidavit of the principal clerk-stenographer that on September 8, 1967 she was told by the Pennsylvania prison official that she would be informed when the prisoner was available for trial (although denied), there is no indication that the prosecutor or any responsible subordinate with knowledge of the terms of the act alerted the staff to make another inquiry before the 180 days expired so that either the defendant could be brought in to begin trial by that time or a continuance sought on any good reason then apparent. Indeed, even when belated inquiry on November 14 revealed that the prisoner was available (he had been, since September 21) the prosecutor's office still did nothing to bring him to trial, and no one can say on the record before us when anything would have been done toward that end had the *147 prosecutor not been stung into realization of his default and into action by the prisoner's motion for dismissal on December 12. The prosecutor has not advanced "good cause" for any extension, if the statute is to be accorded any meaningful enforcement.
The State has abandoned the argument in its brief that defendant did not cause the statutory notice of demand to be delivered to the courts of Atlantic County.
Judgment affirmed.
KOLOVSKY, J.A.D. (dissenting).
If State v. Mason, 90 N.J. Super. 464, 473 (App Div. 1966), is correct in its holding that the statutory provision (N.J.S. 2A:159A-3 (a)) permitting an extension of the 180-day period for the trial of a defendant for good cause can be invoked only if the continuance had been granted prior to the expiration of the 180-day period, then I agree that we must affirm the trial court's dismissal of the indictment with prejudice.
However, as I read the statute, it does not call for the interpretation adopted in Mason. The statute does not expressly limit the time within which a continuance may be granted to 180 days.[*] As I read it, the statute permits the grant of "any necessary or reasonable continuance," "for good cause shown in open court, the prisoner or his counsel being present" at any time prior to an actual entry of an order dismissing the indictment pursuant to Article V, N.J.S. 2A:159A-5(c). The latter section in referring to "the period provided in Article III or IV hereof" must be deemed to include not only the 180 days but such additional number of days as the court for good cause shown may grant pursuant to Article III, N.J.S. 2A:159A-3(a). If the rule were otherwise, Article V would be self-executing, and it is not. See State v. West, 79 N.J. Super. 379, 387 (App. Div. 1963).
*148 Nor do I find in the statute's use of the word "continuance," rather than the words "extension of time," the significance which the majority opinion in the present case attaches to it. The power thus granted to the court to extend the time within which a defendant may be brought to trial beyond the 180 days referred to in the statute is not dependent on the court's theretofore having fixed a trial date from which the continuance is to be measured. It is of interest to note that the instructions to prosecutors issued by the Council of State Governments with reference to the Interstate Agreement on Detainers recites that "Extensions of the time for beginning trial may be granted by the court for good cause, but the prisoner must be present or represented by counsel when a request for an extension is made." (Emphasis added)
The trial judge was, of course, bound by the ruling of this court in State v. Mason. He therefore did not concern himself with whether "good cause" for a continuance was shown. Rather, he concerned himself only with whether any facts existed to bring the case within the tolling provision of the statute. Obviously they did not since the only provision in the statute providing for a tolling of the statutory periods is that set forth in N.J.S. 2A:159A-6(a), which reads:
"(a) In determining the duration and expiration dates of the time periods provided in Articles III and IV of this agreement, the running of said time periods shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter."
The question as to whether good cause exists for the grant of the continuance requested by the prosecutor's cross-motion has not been decided. It should be, and this at a hearing at which all relevant facts and circumstances may be developed beginning with the indictment and continuing until the prosecutor's motion was made.
In the absence of more specific guidelines in the statute, the question of whether good cause exists for a continuance must be resolved from a consideration of the totality of circumstances *149 in the particular case, on the background of the considerations which motivated the interstate agreement, as expressed in N.J.S. 2A:159A-1.
Of particular significance is the fact that nothing which the prosecutor did or failed to do was indicative of an intent not to prosecute the indictment. The record is to the contrary.
I am of the opinion that in such circumstances the statutory power of the court to grant a necessary and reasonable continuance for good cause is available to correct an inadvertent or a negligent oversight by personnel in the prosecutor's office  and in the county clerk's office in failing to send the copy of the prisoner's request to the assignment judge  where, as here, the resultant delay is short and there is no showing that defendant, who had been represented by counsel at least since his request for trial was served, had been prejudiced thereby.
That the oversight should occur, whatever the explanation therefor, justifiably merits criticism of the prosecutor's office. But the dispute is not a private controversy between the prosecutor and defendant. Cf. State v. Ashby, 43 N.J. 273, 276 (1964) The public interest is involved, as the statute recognizes by authorizing judicial extensions of the 180-day period for good cause.
I would reverse and remand the matter to the trial court for hearing on the merits of the prosecutor's cross-motion.
NOTES
[1] "At first blush it might appear that a man already in prison under a lawful sentence is hardly in a position to suffer from `undue and oppressive incarceration prior to trial.' But the fact is that delay in bringing such a person to trial on a pending charge may ultimately result in as much oppression as is suffered by one who is jailed without bail upon an untried charge. First, the possibility that the defendant already in prison might receive a sentence at least partially concurrent with the one he is serving may be forever lost if trial of the pending charge is postponed.[7] Secondly, under procedures now widely practiced, the duration of his present imprisonment may be increased, and the conditions under which he must serve his sentence greatly worsened, by the pendency of another criminal charge outstanding against him.[8]

And while it might be argued that a person already in prison would be less likely than others to be affected by `anxiety and concern accompanying public accusation,' there is reason to believe that an outstanding untried charge (of which even a convict may, of course, be innocent) can have fully as depressive an effect upon a prisoner as upon a person who is at large. Cf. Klopfer v. North Carolina, supra, 386 U.S. [213] at 221-222, 87 S.Ct. [988] at 992-993, 18 L Ed.2d [1] at 6, 7. In the opinion of the former Director of the Federal Bureau of Prisons,
`[I]t is in their effect upon the prisoner and our attempts to rehabilitate him that detainers are most corrosive. The strain of having to serve a sentence with the uncertain prospect of being taken into the custody of another state at the conclusion interferes with the prisoner's ability to take maximum advantage of his institutional opportunities. His anxiety and depression may leave him with little inclination towards self-improvement.'[9]
Finally, it is self-evident that `the possibilities that long delay will impair the ability of an accused to defend himself' are markedly increased when the accused is incarcerated in another jurisdiction. Confined in a prison, perhaps far from the place where the offense covered by the outstanding charge allegedly took place, his ability to confer with potential defense witnesses, or even to keep track of their whereabouts, is obviously impaired. And, while `evidence and witnesses disappear, memories fade, and events lose their perspective,'[10] a man isolated in prison is powerless to exert his own investigative efforts to mitigate these erosive effects of the passage of time." (footnotes omitted)
[*] For an example of language used to mandate that application for a continuance or extension be made within time fixed for original action, see R. 3:18-2.