**Aaron PITTMAN, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Jan. 10, 1973.

Reargument Denied Jan. 23, 1973.

William J. Taylor, III, Asst. Public Defender, Wilmington, for defendant below, appellant.

Richard H. Schliem, III, Deputy Atty. Gen., Wilmington, for plaintiff below, appellee.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

CAREY, Justice (for the majority of the Court):

Defendant-appellant Aaron Pittman (Pittman) seeks reversal of his conviction in the Superior Court of the crime of robbery. Error is assigned not to the conduct of the trial or the sentence, but rather to the Court's refusal to dismiss the indictment with prejudice on the ground that the State failed to prosecute the charge within the time limits set by the Interstate Agreement on Detainers, 11 Del.C. §§ 2540–2550 (1969) (IAD). We agree with appellant's contentions.

The Delaware IAD has never been reviewed by this Court, and this case is therefore one of first impression in Delaware. It is necessary that we review the chronology of events and the statutory provisions in some detail.

I

The chronology is this:

*November 8, 1969.* The robbery giving rise to the indictment was committed in Wilmington by four men, one of whom was allegedly Pittman.

*November 10, 1969.* Pittman was arrested in Baltimore, Maryland, in connection with this robbery.

*November 20, 1969.* Pittman refused to waive extradition to Delaware on this charge.

*November 26, 1969.* Pittman was informed by someone that the Delaware charges against him were dropped. He remained incarcerated in Maryland because of other charges in that state.

*May 4, 1970.* Pittman having discovered that this charge was not dropped, sent a handwritten request to a Maryland prison official (apparently the proper person) requesting that detainer forms be filled out so that he could re-

turn to Delaware for a speedy trial.[1] The prison official refused to act and informed Pittman that Delaware was not a party to the IAD.[2] Pittman was told to write directly to the Delaware prosecutor.

*July 2, 1970.* Pittman typed and sent by certified mail a letter to the "District Attorney, Office of the State's Attorney, Court House, Wilmington, Delaware," requesting an immediate trial on the robbery charge.

*July 13, 1970.* The certified letter of July 2 was received in the Attorney General's office. The record shows no responsive action whatever by the Attorney General or his staff.

*August 4, 1970.* Pittman addressed a handwritten "Petition for a Writ of Mandamus Informa Pauperis" (sic), which was sent by certified mail to the Superior Court. The petition was captioned as follows:

AARON PITTMAN

PETITIONER, IN PER SEA (sic) vs.

STATE OF DELAWARE, ET AL. "Respondent"

Mr. Daniel T. Buckson, Et. Al. (sic)
The Attorney Generals Office
Charge: Robbery

*August 7, 1970:* Pittman mailed a handwritten certified letter to "The Chief Judge of the Supreme Bench of Wilmington, Delaware,"[3] also requesting a speedy trial. Underneath the address block in the center of the page, Pittman had written and underlined the title of his letter as follows:

*Interstate Detainer*

*Fast and Speedy Trial Petition*

This letter was received in the Office of the Chief Justice of this Court; there is no record of any subsequent action with regard to it; usually, a letter of this sort is promptly delivered to the Attorney General's Office, and presumably this happened here.

*August 20, 1970.* The President Judge, having received the correspondence of August 4, wrote to Pittman advising him that his petition had been filed with the Superior Court and that copies of his petition were forwarded to the Attorney General and the Public Defender. The record again shows no responsive action by the Attorney General or his staff.

*November 17, 1970.* The Deputy Administrator for the IAD in Delaware, under a cover letter to the Maryland Attorney General, enclosed a form submitted by a Delaware Deputy Attorney General requesting custody of Pittman to clear a felony indictment pending in Delaware.[4] Trial on this indictment was scheduled for December 16, 1970, but the case was not then tried because Pittman had not been delivered to Delaware.

*February 25, 1971.* Pittman refused to waive extradition under 11 Del.C. § 2543(d) at a court hearing in Maryland. The Delaware Attorney General was notified of this refusal by a letter of March 4, 1971, from the Maryland IAD administrator.

*April 2, 1971.* The Delaware Deputy Attorney General was notified by the Warden of the Maryland prison of Pittman's refusal to waive extradition.

---

1. 11 Del.C. § 2542. Maryland has adopted the IAD in its entirety, as has Delaware. *See* Maryland Code, Art. 27, §§ 616A–616R.

2. The Delaware IAD became effective on July 8, 1969, under 57 Del.Laws, Ch. 223, § 1; this was four months before this robbery, and ten months before Pittman's request to the Maryland official.

3. There is no such Judge or Court.

4. *See* 11 Del.C. § 2543. The detainer upon which this request was founded arose out of the November 8, 1969, robbery, *supra.*

*May 20, 1971.* Pittman was brought to Delaware under temporary custody from the State of Maryland, in accordance with 11 Del.C. §§ 2543–44.

*July 26, 1971.* Pittman was convicted of the robbery in the Superior Court.

## II

The Delaware Constitution provides that:

"In all criminal prosecutions, the accused hath a right to . . . a speedy and public trial by an impartial jury;" Del.Const. art. 1, § 7.

The Delaware Legislature, in enacting the IAD, provided that:

". . . it is the policy of the party States and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints." 11 Del.C. § 2540.

The Legislature further required that:

"This agreement shall be *liberally construed* so as to effectuate its purposes." 11 Del.C. § 2548 (emphasis added).

■ What constitutes a speedy trial is relative and may be variable, depending on the facts and circumstances of each individual case. Kominski v. State, Del.Supr., 1 Storey 163, 141 A.2d 138 (1958); cert. den. 358 U.S. 850, 79 S.Ct. 80, 3 L.Ed.2d 86 (1958). Nevertheless, the Legislature may establish a time period after which the accused will be considered to have been denied a speedy trial, regardless of circumstances, for the preservation and protection of the accused's rights.

The IAD provides that a prisoner against whom a detainer is lodged may request extradition for purposes of trial under 11 Del.C. § 2542. In such a case, the State *must* respond and bring the prisoner to trial within 180 days after written notice is delivered to the prosecutor's office.

A similar option is available to the State under 11 Del.C. § 2543. The State may initiate the detainer proceeding and *must* then commence trial within 120 days of the prisoner's arrival in the requesting state's jurisdiction. The commencement of a trial beyond either of the aforementioned time limits necessarily denies the prisoner a speedy trial, and the indictment(s) must be dismissed with prejudice. 11 Del.C. §§ 2542(d), 2543(e).

Two questions are presented: (1) Were Pittman's requests and letters during the period May 4, 1970, to November 17, 1970, sufficient under the IAD to invoke the 180-day provision of § 2542?; and (2) If Pittman's requests were valid, did the November 17, 1970, request of the Attorney General toll the statute as to Pittman's requests under § 2542 and thereby permit the State to invoke the 120-day after-extradition provision of § 2543, thus validating the action of the Court below?

## III

The State urges us to disregard Pittman's requests of May 4, July 2, August 4, and August 7, 1970, because they did not satisfy the procedural requirements of the IAD. The State claims that the IAD is in derogation of the common law and as such must be strictly construed. It contends that the mistakes of the Maryland officials should not frustrate Delaware's timely attempt to bring accused felons to trial.

■ This construction of the IAD not only misreads the purpose, but effectively emasculates it as well. The Legislature enacted no specific requirement that a prisoner, for whose benefit the IAD was enacted, be apprised of the technical aspects of the law. Indeed, the Legislature has placed one, and only one burden on the prisoner, that is, to ask the prison official who has custody over him to prepare and send the forms to the jurisdiction from

which a detainer is lodged against him. The prisoner is not required to determine whether the foreign state is under the Act; nor is he required to police the correction official to establish that the official performs his statutory duties; nor is he bound to make sure that the form of his request complies with the technical and procedural requirements of the IAD.

■■ On the other hand, the Uniform Act has put an absolute burden on the prison official to prepare and send these forms and, impliedly, to have knowledge or to determine whether the state which has lodged the detainer is under the IAD. The prisoner has no supervisory powers and the prison official has no discretion under the Act. State v. Lippolis, 101 N.J.Super. 435, 244 A.2d 531, 536 (1968); rev'd on other grounds 55 N.J. 354, 262 A.2d 203 (1970); People v. Masselli, 17 A.D.2d 367, 234 N. Y.S.2d 929, 933 (1962); People v. Esposito, 201 N.Y.S.2d 83, 90 (Co.Ct.1960).

■ If, then, as the State urges, we should strictly construe this statute, we must do so in favor of the prisoner because the State, through its agents and its control of the procedural aspects of the IAD, controls the only ultimate guarantee of performance for the benefit of the prisoner.

■ Both the Maryland and Delaware officials committed error in this case. Pittman did more than he was required to do under the IAD. He not only requested assistance from the proper Maryland officer, but in spite of the erroneous response, he wrote directly to the Attorney General of Delaware on July 2, 1970, which was received by the Attorney General's office on July 13, 1970. The letter concluded as follows:

"So at this time, I am prevailing upon this office [Delaware Attorney General] to clear up this situation once and for all. Namely, if I have a detainer in this office, *I wish to answer it immediately,* and if not I would be very grateful if your office would notify the Baltimore Central Police Station, and the Warden at the above address of same. This *detainer is denying* me the *rights* afforded to all the inmates here, and I sincerely feel that it is without merit." (emphasis added).

■ Pittman thereafter sent the additional certified letters mentioned above, with the request for prompt trial; all were ignored, so far as the record shows. It would be a gross violation of the spirit of the IAD if we were to penalize Pittman for the neglect of the Attorney General's office or the mistake of the Maryland official. The purpose of the Act is to enable a prisoner in another state to compel prompt trial of a criminal charge in Delaware without awaiting his release in the other state. That purpose is completely destroyed if state officials fail to perform the duties imposed upon them by the Act.

IV

■ The State has urged that we treat its request to Maryland on November 17, 1970, initiated under § 2543, as the commencement date for tolling purposes under the IAD. To accept this would be completely to ignore and nullify all action previously undertaken by Pittman, including Pittman's first request for action under the IAD to the Maryland officials 197 days earlier. It is a specious argument to rely upon Pittman's refusal to waive extradition in November, 1969; his later request for prompt trial impliedly revoked that prior refusal to waive extradition. On February 25, 1971, Pittman had the right to refuse to waive extradition because the time limit of 180 days had expired; he had requested extradition, and the failure of the State to honor his request was not his fault. A holding that the State may ignore a prisoner's request until after, or shortly before, the expiration of the 180-day period of § 2542, and then extend that period by initiating proceedings under § 2543 would deprive him of a statutory right and effec-

tively nullify the purpose and spirit of the 180-day provision of § 2542. The prisoner's request provision of 11 Del.C. § 2542(a) provides that trial must be held within 180 days after the prosecutor has been given notice of the request for trial unless:

". . . for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance."

Further, § 2545(a) provides that:

". . . the running of the time periods shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter."

No application was made in Superior Court under either of the quoted paragraphs. Delaware could have acted upon Pittman's July 2 request for disposition, but did not. Even after the trial date of December 16, it took no action, so far as the record shows, to insure timely extradition. No reason appears in the record for Pittman's failure to appear in Delaware on that date. There is no circumstance here which will allow the time period to be tolled. State v. Lippolis, *supra*; State v. Mason, 90 N.J.Super. 464, 218 A.2d 158 (1966). In any event, this question as to a good cause continuance is not now before us because no such application was ever made.

### V

■ The State asks us to hold Pittman to strict compliance with the statute, but at the same time asks us to excuse the mistakes of the Maryland official and the neglect of the Attorney General's office. The State had sufficient notice to require it to take appropriate action upon Pittman's request. The burden of compliance with the procedural requirements of the IAD rests upon the party states and their agents; the prisoner, who is to benefit by this statute, is not to be held accountable for official administrative errors which deprive him of that benefit.

Finally, it is not necessary for us in this case to rule on which date the 180-day provision of § 2542 commenced. As we have said, the State could not nullify the effect of Pittman's request by its November 17 letter to the Maryland officials. Regardless of whether the 180-day provision commenced on May 21, 1970, or July 13, 1970, Pittman's transfer to Delaware in May, 1971, and his trial in July, 1971, were beyond the statutory limit of 180 days. No valid reason has been shown to deprive him of the statutory protection.

The judgment below must be reversed with instructions to dismiss the indictment.

HERRMANN, Justice (dissenting):

I would affirm the conviction.

This case does not turn on the defendant's constitutional rights to a speedy trial; it involves his statutory rights under the Interstate Agreement on Detainers.

The negligence or mistake of the Maryland official involved was the determinative factor in the inability of the defendant to invoke successfully the provisions of the Agreement. In my opinion, the right of the State of Delaware to try and to punish an offender against its laws is not foreclosed under the Agreement by the failure of an official of another party state to perform properly the latter's duties and functions thereunder.

The controlling mistake in this case was committed by the official at the Maryland House of Corrections. On May 4, 1970, he responded to the defendant's request for final disposition of the Delaware charges under the Agreement by erroneously replying: "The State of Delaware is not a par-

ty to the Agreement on Detainers.[1] You will have to write to the Prosecuting Attorney, Court House, Wilmington, Del. and request a speedy trial."

Instead of such mistaken response and advice, the Compact required the Maryland correctional authorities: (1) to attach to the defendant's request for final disposition of the Delaware charges pending against him a certificate "stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole, eligibility of the prisoner, and any decisions of the State parole agency relating to the prisoner"; and (2) to transmit directly to the "appropriate prosecuting official and court" in Delaware the prisoner's request, the above certificate, and an "offer of temporary custody". 11 Del.C. § 2542(a) and (b) and § 2544(a). The failure of the Maryland official to fulfill his statutory duties in these respects commenced the chain of events and the confusion of which the defendant now complains.

Instead of the clearly defined and readily identifiable documents utilized by party states under the Agreement, which should have been received in good official order from the Maryland authorities, Delaware officials received directly from the defendant an assortment of communications in various forms:

(1) A letter to the Attorney General, dated July 2, 1970, in which the defendant stated that he had been informed by Maryland authorities both that the Delaware detainer against him had been "dropped" and also that it was still in effect; and the defendant requested the Attorney General "to clear up this situation once and for all", stating that if there was a detainer, he wished "to answer it immediately".

(2) A handwritten letter to the "Chief Judge of the Supreme Bench of Wilmington, Del.",[2] dated August 4, 1970, petitioning that the State of Delaware "bring forth the body of the defendant to comply with the Interstate Detainer Act".

(3) A handwritten petition to the "Honorable Chief Justice (of the Circuit Court),[2] Court House, Wilmington, Delaware" entitled "Petition for a Writ of Mandamus" in which speedy trial on the Delaware charges was requested.

Insofar as these communications related to the defendant's rights under the Agreement, all were misdirected; all should have been addressed to the Maryland authorities. None was the identifiable and complete communication that Delaware authorities were entitled to receive from the defendant via the Maryland Correctional authorities under the Agreement. None constituted the notice and request for final disposition of the Delaware charges, complete with "Certificate of Inmate Status"[3] and "Offer to Deliver Temporary Custody" from the Maryland Correctional authorities, as is required by the Agreement. Moreover, no confirmatory communication was received directly from the Maryland authorities as the Delaware authorities were entitled to expect under the Agreement.[4]

Under these circumstances, Delaware had no responsibility as a party state under the Agreement either to recognize the mis-

---

1. This, of course, was the basic mistake. Delaware had become a party to the Interstate Agreement in July 1969. Obviously, the news had not reached the Maryland official.

2. There are no judicial officers in Delaware having such titles.

3. The statutory Certificate of Inmate Status may be important to the prosecuting party state in deciding whether the prosecution should be pressed or dropped.

4. "The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner * * *." 11 Del.C. § 2542(a).

"[T]he Commissioner of Corrections or other official having custody * * * shall promptly forward [the request] to-

cellaneous communications received from the defendant as official communications under the Agreement, or to attempt to perfect the defendant's abortive attempts at compliance without the aid of the State having custody of him. Prosecutors and judges constantly receive communications from prisoners in all manner of completeness and correctness, requesting all manner of relief, proper and otherwise. The Agreement does not require a party state, in my opinion, to screen all such communications to assure compliance with the terms of the Agreement by another party state. Unless and until the state having custody has complied substantially with the terms of the Agreement on its part to be performed, the prisoner's recourse to speedy trial is limited, in my view, to his usual constitutional rights. His standing to invoke his statutory rights under the Agreement must be based upon substantial performance under the Agreement by the state having custody of him. For the requirement of at least substantial compliance with similar statutory provisions, see Brimer v. State, 195 Kan. 107, 402 P.2d 789 (1965); King v. State, 5 Md.App. 652, 249 A.2d 468 (1969).

Accordingly, it is my conclusion that no complete and official request for final disposition of the Delaware charges was ever received from, or on behalf of, this defendant; that, therefore, the 180 day period of limitations never began to run against the prosecution here involved. Necessarily implicit in the Agreement, I think, is the rule of practicality that the 180 day limitation period does not commence to run until substantially complete and accurate documents have been received by one party state from the other.

This prosecution was commenced within 120 days after the defendant's arrival in Delaware pursuant to the action initiated by this State under 11 Del.C. § 2543. Accordingly, the trial was timely thereunder.

I would hold, therefore, that the Superior Court did not err in denying the defendant's motion to dismiss the indictment with prejudice.

gether with the certificate to the appropriate prosecuting official and court * * *." See § 2542(b).

"The Commissioner of Corrections or other official having custody of the prisoner shall forthwith notify all appropriate prosecuting officers and courts in the several jurisdictions within the State to which the prisoner's request for final disposition is being sent of the proceeding being initiated by the prisoner. Any notification sent pursuant to this paragraph shall be accompanied by copies of the prisoner's written notice, request, and the certificate." See § 2542(d).

"If the request for final disposition is made by the prisoner, the offer of temporary custody shall accompany the written notice provided for in section 2542 of this agreement." See § 2544(a).