**STATE of Delaware**

v.

**Christopher McDOWELL, Defendant.**

Superior Court of Delaware.

Submitted April 9, 2003.

Decided May 13, 2003.

Nicole M. Walker, Assistant Public Defender, Wilmington, DE, for defendant Christopher McDowell.

Daniel R. Miller, Deputy Attorney General, Wilmington, DE, for the State of Delaware.

## ORDER

DEL PESCO, J.

For the reasons set forth in the Memorandum Opinion attached hereto, defendant's Motion to Dismiss for Lack of Speedy Trial is–DENIED.

IT IS SO ORDERED.

## MEMORANDUM OPINION

On February 13, 2003, defendant, Christopher McDowell ("McDowell") filed a motion to dismiss various criminal charges against him arising from an alleged armed robbery committed in Delaware. McDowell is presently incarcerated in Pennsylvania. He claims the State of Delaware has failed to provide a speedy trial in compliance with the Uniform Agreement on Detainers ("UAD" or "the Act"), the Sixth Amendment of the United States Constitution, and Article I, Section 7 of the Delaware State Constitution. At present, McDowell refuses to authorize his transfer of temporary custody to Delaware. For the reasons stated below, his motion is denied.

### Factual Background

The crimes for which McDowell was indicted allegedly occurred at about 1:00 p.m. on June 23, 2000. According to police reports, a man walked into Hank's House of Liquors, purchased a bottle of beer, then returned to the counter with a gun and demanded money. An immediate investigation identified McDowell as a suspect and on June 24, 2000, a warrant for his arrest was issued in Delaware. That

same day, New Castle County Police spoke with McDowell on the phone and arrangements were made for his voluntary surrender. McDowell failed to appear. Police learned from McDowell's girlfriend that he had fled the jurisdiction.

On June 27, 2000, Delaware's Attorney General requested help from local FBI agents who secured a Federal Unlawful Flight to Avoid Prosecution warrant ("UFAP") against McDowell.[1] On July 6, 2000, McDowell was arrested in Pennsylvania on the UFAP and handed over to Pennsylvania authorities. On July 13, 2000, McDowell waived extradition to Delaware on the Federal UFAP. This is the only time that McDowell has waived extradition. Shortly thereafter, parole authorities in Pennsylvania issued their own arrest warrant for McDowell. They next informed Delaware authorities that McDowell was no longer available for extradition, in light of the new charges alleging parole violations. The Pennsylvania Parole Authority proceeded against McDowell.

On July 31, 2000, McDowell was indicted in Delaware by the New Castle County Grand Jury on armed robbery and related charges.[2] Due to his custody in Pennsylvania, McDowell failed to appear at arraignment and a capias was issued on August 18, 2000. On August 31, 2000, while McDowell was awaiting his fate before the Pennsylvania parole board, Delaware authorities, having been denied extradition, lodged a detainer request for McDowell's temporary custody under a different stat-

---

1. 18 U.S.C.A. § 1073 (2003). The statute reads in relevant part:

   Flight to Avoid Prosecution or Giving Testimony.

   Whoever moves or travels in interstate or foreign commerce with intent to ... (1) avoid prosecution ... shall be fined under this title or imprisoned not more than five years, or both.... *Id.*

2. A Delaware Grand Jury returned a four count felony indictment against McDowell for; (i) Robbery First Degree, DEL.CODE ANN. tit. 11 § 832, (ii) Possession of a Firearm During the Commission of Felony, DEL.CODE ANN. tit. 11 § 1447A, (iii) Possession of a Deadly Weapon by Person Prohibited, DEL. CODE ANN. tit. 11 § 1448, (iv) Conspiracy Second Degree, DEL.CODE ANN. tit 11 § 512.

ute, the UAD. On September 12, 2000, McDowell was sentenced in Pennsylvania, to a period of incarceration for parole violations.

On January 9, 2001, the Delaware Prothonotary received a letter sent by McDowell requesting "a copy of my docket entries ... [i]f at all possible could you please provide me with a copy of the Criminal Rules that govern a Motion for Dismissal of Charges." [3] The letter does not request that the State bring him to trial. On January 30, 2001, by signing "Form I" pursuant to the UAD, he was notified by Pennsylvania authorities of the detainer filed by the State of Delaware.

On February 13, 2001, after McDowell had been notified and provided an opportunity to waive extradition under the UAD, the Delaware Attorney General's office received a letter from the Pennsylvania Department of Corrections ("Pa DOC") indicating that:

> McDowell has indicated that he is not willing to return to your jurisdiction, and that he intends to fight extradition. He claims he signed a waiver this past summer and this action is no longer timely.[4]

Nothing further was heard from McDowell until September 4, 2001, when he sent a request to the Pa DOC for a copy of the forms sent by Delaware pursuant to the UAD. He also wanted to know what forms had been sent to Delaware. The Pa DOC responded:

> Mr. McDowell, I'm not sure exactly what you mean, but I think you are referring to Form IV of the UAD "offer to deliver temporary custody." Since a

signed waiver of extradition is not on file, and could not be sent [with Pennsylvania's offer of temporary custody to Delaware under the UAD], the matter remains in limbo. Do you wish to waive at this time? If so, please contact me.[5]

McDowell did not respond or sign the "Form IV" waiver of extradition, and consequently the Pa DOC remained unable to present the State of Delaware with an offer of temporary custody. Again on October 24, 2001, McDowell wrote the Pa DOC stating:

> Could you please inform me as to my status of the detainer from the state of Delaware. All of the proper paperwork has been completed. I sent the [Delaware] Prothonotary a letter while I was down [at] GraterFord [sic] in January. They sent the proper paperwork here to obtain temporary custody. In February you sent them the paperwork to continue the process.... [6]

Again, the Pa DOC told McDowell that the only thing holding up the process was his refusal to waive extradition by signing "Form IV." Again the Pa DOC told him:

> Mr. McDowell, please refer to my response dated 9–4–01 to your request dated the same. The [U]AD is in limbo–awaiting a waiver of extradition so that our offer to deliver temporary custody (form 4) can be sent. Do you wish to waive at this time? If so, contact me.[7]

McDowell argues that "[o]n July 13, 2000, the defendant executed a Waiver of Extradition.... The Court of Common Pleas of Delaware County [Pennsylvania] subsequently issued an Order to deliver

---

**3.** *See* Ex. A, Def.'s Resp. Ct. Order Requiring Def. Waive Extradition (hereinafter "Def.'s 2nd Mot.").

**4.** *See* Ex. A14, State's Resp. Def.'s Mot. Dismiss for Lack of Speedy Trial (hereinafter "State's Resp.").

**5.** Ex. A16, State's Resp.

**6.** Ex. A17, State's Resp.

**7.** *Id.*

the defendant to Detective Ron Mullins of the Delaware Attorney General's Office."[8] He insists that this extradition waiver, originally signed prior to the time a warrant was lodged in Pennsylvania and while he was detained pursuant to the UFAP, remains the valid waiver. McDowell contends that that waiver required Delaware to bring him to trial within 180 days of July 13, 2000. He refuses to sign anything else.

Counsel on McDowell's behalf filed a motion to dismiss the indictment on speedy trial grounds. A hearing was held so that testimony could be taken and factual findings made. McDowell refused to take the steps necessary to secure his appearance in Delaware. He was told, through counsel, that his appearance would not be considered a waiver of his argument, but that his appearance was required for a disposition of the motion. He then filed a motion entitled *Defendant's Response to Court Order Requiring Defendant to Waive Extradition,* and attached an affidavit wherein he "hereby waive[s] any appearances that may be desired at any, and or all hearing(s) regarding the Motion to Dismiss ...".[9]

## Analysis and Discussion

Title 11, chapter 25, the Uniform Agreement on Detainers, was specifically enacted to streamline and standardize the process by which prisoners are made available for trial in states other than where they are imprisoned.[10] The UAD provides that:

Whenever a person **has entered upon a term of imprisonment** in a penal or correctional institution of a party state ... [and] during the continuance of the term of imprisonment there is pending ... any **untried indictment** ... on the basis of which a detainer has been lodged against the prisoner, the prisoner shall be brought to trial within 180 days after the prisoner shall have caused to be **delivered** to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice ... and the **request for a final disposition** .... [11]

■ The prisoner is expected to comply with the formalities demanded by the statute.[12] The formalities are simple:

The Commissioner of Correction ... having custody of the prisoner shall promptly inform the prisoner of the source and contents of any detainer lodged against the prisoner and shall also inform the prisoner of the right to make a **request for final disposition** of the indictment.... [13]

The written notice and **request for final disposition** referred to [above] ... shall be given or sent by the prisoner to the Commissioner of Correction or other **official having custody of the prisoner** who shall promptly forward it ... to the prosecuting official ... by registered or certified mail, return receipt requested.[14]

■ The defendant had not **entered upon a term of imprisonment** until the

8. Def.'s Mot. Dismiss Lack Speedy Trial, at 2 (hereinafter "Def.'s 1st Mot.").

9. *See* Ex. "H", Def.'s 2nd Resp.

10. Del.Code. Ann. tit. 11 § 2540 (2001).

11. *Id.* at § 2542(a)(*emphasis added*).

12. *Beebe v. State,* 346 A.2d 169, 171 (Del. 1975). Delaware has recognized that strict compliance with the UAD may not be necessary when a defendant proffers adequate evi-

dence of both (i) the serious failure of a state official to perform a duty, and (ii) that defendant has taken diligent and reasonable efforts to invoke the UAB. *Id.; see also Pittman v. State,* 301 A.2d 509 (Del.1973). Such circumstances are clearly not present here.

13. Del.Code Ann. tit 11 § 2542(c).

14. *Id.* at § 2542(b)(*emphasis added*).

Pennsylvania charges became a fixed sentence. There was no **untried indictment** in Delaware until July 31, 2000, and no detainer was issued by Delaware until January 2001. Further, the 180 day protection under the Act does not run until the defendant has made a **request for final disposition** to **the official having custody of the prisoner,** and this request is **delivered, certified mail,** by such official. This includes signed paperwork necessary for the temporary transfer to Delaware. Clearly, the waiver signed in July 2000 with respect to the Federal UFAP warrant has no legal significance. McDowell's letters to the Delaware Prothonotary and various other Delaware parties are equally irrelevant under the Act. McDowell has consistently refused to execute the requisite forms for Delaware to secure his temporary custody.

■ The State has taken all steps necessary to facilitate the defendant's transfer here for trial. While McDowell asserts a right to a speedy trial, he has never asserted it in the manner necessary to achieve his proclaimed objective. This is true in spite of repeated efforts to inform him of the necessary steps. Given the new charges in Pennsylvania and that states election not to extradite McDowell pursuant to the initial waiver under the UFAP warrant, the State of Delaware was relegated to filing for temporary custody under the UAD.

■ The Delaware Supreme Court has emphatically stated that a prisoner's rights under the UAD do not accrue until the defendant specifically asks the prison official detaining him to send the required forms, registered mail, to the jurisdiction from which a detainer has been lodged.[15] "Once a detainer is lodged it is the responsibility and obligation of the defendant to complete the necessary notice demands to activate the provisions of the Uniform Agreement on Detainers."[16] McDowell's failure to comply with the requirements of the UAD is fatal to his claim where he ignores the official having custody over him and after notice of the proper procedures continues to communicate directly with officials in Delaware.[17]

### The Constitutional Argument

In examining a claim for violation of a defendant's right to a speedy trial, the Court must consider *Barker v. Wingo.*[18] *Barker* requires balancing the conduct of the prosecution with that of the defendant. The elements for consideration are: (i) the length of delay, (ii) the reason for the delay, (iii) the defendant's assertion of the right to a speedy trial, and (iv) prejudice.[19] Short work can be made of that analysis in this case. At no time since the alleged crime has McDowell been present in the State of Delaware. His absence is solely attributable to his own conduct.

### Conclusion

Defendant's motion to dismiss is DE-NIED because he has failed to comply with the Uniform Agreement on Detainers and is not present before the Court in

15. *See Beebe,* 346 A.2d at 171. *See also Pittman v. State,* 301 A.2d 509 (Del.1973).

16. *State v. Ringgold,* 2003 WL 1903768, *4 (Del.Super.).

17. *See generally State v. Ringgold,* 2003 WL 1903768, *4 (Del.Super.); *see also State v. Gohagan,* Del.Super., ID# 92007724DI, Al-ford, J. (March 19, 2003)(Order)(stating that when a prisoner outside of Delaware undertakes his own method of securing a speedy trial, he has no claim under the UAD).

18. *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

19. *Id.* at 530–31, 92 S.Ct. 2182.

order to implicate Delaware and U.S. Constitutional protection.