*122
 
 OPINION OF THE COURT
 

 Jones, J.
 

 The 180-day period for trial of charges against one who has served a request for final disposition thereof pursuant to the Interstate Agreement on Detainers is not tolled during the period of his detention in another county for prosecution on a charge pending in that county; some of that period will be excluded, however, if it may properly be attributed to the disposition of an omnibus motion made by the defendant with respect to the charges in the first county. The making of a suppression motion does not operate to deprive a defendant of his right to a prompt trial under the Interstate Agreement. Finally, it is not harmless error to refuse to suppress a statement concerning the death of a victim of a homicide obtained from a defendant in violation of his right to counsel when that statement, although in some respects similar to one made to and testified to by another witness, contains a more detailed and more damaging account of the event as well as of his incriminating conduct thereafter.
 

 Defendant appeals from a judgment of conviction of the crimes of murder in the second degree, robbery in the first degree and criminal possession of a weapon in the second degree which arose out of the death of Sebastian Lopez on June 30, 1978. He contends that it was error not to have granted his motion to dismiss the prosecution because his trial had not been brought on within 180 days after his request for final disposition pursuant to the Interstate Agreement on Detainers (contained in CPL 580.20). Additionally, he claims that it was error for the court to have denied his motion to suppress testimony by Detective Bruno Saia, a New York City police officer, relating a statement obtained from defendant in violation of his right to counsel. The prosecution agrees that the statement should have been suppressed, but contends that its introduction was nonetheless harmless error in light of testimony given on trial by defendant’s sister, a contention accepted by the court below in affirming the judgment of conviction.
 

 Concluding that this error was not harmless, we reverse the order of the Appellate Division. Because the
 
 *123
 
 determination whether the time of defendant’s trial exceeded the 180-day limitation imposed by the Agreement on Detainers will depend on resolution of the question of how much, if any, of the delay which followed a motion by defendant pursuant to CPL article 255 may reasonably be attributed to that motion and therefore is excludable from computation of the 180-day period — a question not addressed by the Appellate Division — the case must be remitted to that court for its consideration of that issue.
 

 On the morning of June 30, 1978 the body of Sebastian Lopez, the victim of a fatal gunshot wound in the chest, was found lying on the ground on Clover Place in Queens County. On the basis of information obtained connecting defendant with an automobile driven by the victim and the sale of tools which had been in the vehicle, defendant within a few days became a suspect in the homicide investigation and was subsequently located in Trenton State Prison, New Jersey. A warrant was issued on August 23, 1978 for defendant’s arrest in connection with the homicide, and he was thereafter returned to Queens County on October 5, 1978 pursuant to the warrant.
 

 Prior to his return, on August 29, 1978 defendant executed and filed an “Inmate’s Notice of Place of Imprisonment and Request for Disposition of Indictments, Informations and Complaints” pursuant to subdivision (a) of article III of the Interstate Agreement on Detainers, requesting disposition of the Queens County homicide charge within 180 days. The effect of that instrument was to start the running of the 180-day period within which his trial had thereafter to begin under the agreement.
 

 Defendant’s motion to dismiss the prosecution for noncompliance with the statutory trial period was made on May 23, 1979, after the unsuccessful interposition of two other motions, one an omnibus motion pursuant to CPL article 255 made on November 13,1978, the other a motion made on April 5, 1979 to suppress his statement to Police Officer Saia. There is no conflict between the parties as to the inclusion or exclusion of various time intervals consumed by such things as adjournments at defendant’s request and delays by the People in producing defendant for arraignment, for the purpose of determining whether
 
 *124
 
 the 180-day period had elapsed on May 23. A single critical period is in dispute. If that period is wholly chargeable to the prosecution, the statutory period for trial had run by May 23 and the denial of the motion to dismiss was error. On the other hand, if 10 or more days of that period are ¿scribed to defendant’s omnibus motion made on November 13, 1978, the statutory period had not elapsed, and it was not error to deny defendant’s motion to dismiss.
 

 We address first a contention by the People that defendant waived his right to seek dismissal of the charges against him for noncompliance by Queens County authorities with the mandatory 180-day time for trial. Both courts below held — Supreme Court as an alternative to its conclusion that the 180-day period had not expired when the motion to dismiss was made — that by making a motion on April 5, 1979 to suppress Detective Saia’s testimony the defendant waived any right he had under the Agreement on Detainers to dismissal of the prosecution, relying on
 
 People v White
 
 (33 AD2d 217). In
 
 White
 
 the court found that, by making a motion to suppress after the trial period fixed by the Agreement on Detainers had elapsed, the defendant had effected such a waiver, stating that (p 221) “[a] prisoner not brought to trial within the statutory period may not continue to participate in the proceedings indefinitely and then, at his pleasure, demand and be granted a dismissal of the indictment.”
 

 The facts in a particular instance may warrant a factual determination that the defendant has elected not to assert or has abandoned his rights under the Agreement on Detainers and has chosen to proceed to disposition without reference thereto. Such a determination, however, is not warranted merely because the defendant takes steps to prepare for trial (by way of a suppression motion or otherwise), whether before or after the expiration of the statutory 180-day period. There is nothing necessarily inconsistent in proceeding to prepare for disposition by trial and in claiming the right to benefits under the Agreement on Detainers. It may be impossible practically to predict with any degree of certainty the expiration date of the 180-day period. Nor should the defendant’s exercise of the full panoply of his pretrial procedural rights be deterred by the
 
 *125
 
 risk that he may thereby jeopardize his rights under the Agreement on Detainers; there is no necessary interrelation between the two. Whether in a particular instance a defendant will be held to have elected to forego or to have abandoned rights to which he might be entitled under the Agreement on Detainers will depend on all the relevant circumstances. Measured by this standard, it was error to have concluded that defendant in this case “waived” his rights under the Agreement on Detainers by making the motion to suppress.
 

 We return then to the question whether the critical 84 days over which the parties are in conflict are days of delay of trial chargeable to the People and therefore includable in the reckoning of the 180-day statutory period for trial running from defendant’s filing of a request for disposition of the Queens County charges. The period in question is the time between November 13, 1978 and February 5, 1979 during which the omnibus motion made by defendant on the first of these dates was pending,
 
 [1]
 
 but also during which he was out of the county, having been removed from Queens to Suffolk County on October 31, 1978 pursuánt to a habeas corpus order secured by the Suffolk County authorities for prosecution on charges pending in that county. Although orders for his return were issued by Supreme Court, Queens County, on the return day of the motion and on several subsequent occasions, they were not effective in procuring defendant’s return to Queens County until February 5,1979, following entry of a judgment of conviction in Suffolk County. On that date the District Attorney of Queens County, in response to defendant’s still pending omnibus motion, requested an adjournment to furnish the Grand Jury minutes to the court, which was followed by a second, similar request, after which the minutes were supplied and the dismissal sought by the motion was dénied by decision of the court handed down on Márch 13, 1979.
 

 
 *126
 
 The People agree that the time consumed by these two adjournments is time chargeable to them and includable in the computation of the 180-day period within which the Queens County charges were required to be tried. They contend however that the running of the statutory period was tolled for the 84 days the motion was pending during which defendant was outside the jurisdiction of Queens County while being detained in Suffolk County. For this contention they rely on subdivision (a) of article VI of the Interstate Agreement on Detainers, which provides that in determining the duration and expiration dates of time periods set out in the agreement “the running of said time periods shall be tolled whenever and for as long as the prisoner is unable to stand trial”. In support of their position, and by way of distinction of
 
 Stroble v Anderson
 
 (587 F2d 830) (cited by defendant as authority that time spent in connection with trial on another charge is not to be excluded from the running of the statutory trial time), the People urge the fact that there was an express reference by Supreme Court in its denial of defendant’s motion to dismiss under the Agreement on Detainers to “defendant’s unavailability for trial while disposing of another indictment”.
 
 [2]
 

 There is no basis however for concluding, as would the prosecution, that the period defendant was held in Suffolk County tolled the running of the mandatory 180-day period. Defendant was not “unable to stand trial” within the statute and is not to be penalized by application of the tolling provision when his unavailability was the consequence of the conduct of the public authorities. In interrupting the running of the 180-day period, after which trial is barred, when defendant is “unable to stand trial”, the statute is reasonably to be interpreted as contemplating a disability attributable to the defendant or his attorney. The words do not encompass a situation like that here in which the unavailability for trial is occasioned not by the condition or conduct of the defendant but by the People of the State in their prosecutorial capacity.
 

 The facts that it was the authorities of Suffolk County rather than of Queens County who erected an obstacle to a
 
 *127
 
 timely trial in Queens County and that unsuccessful efforts to remove the obstacle were made by both the District Attorney and Supreme Court in Queens County does not serve to lay at defendant’s feet the delay which resulted from his presence in Suffolk County and thus to activate the tolling provision. Defendant is not to be disadvantaged by reason of factionalism of the prosecutorial arm of the State. Accordingly, the running of the 180-day period was not tolled by subdivision (a) of article VI of the Agreement on Detainers by reason of defendant’s retention in Suffolk County from November 13, 1978 to February 5, 1979.
 

 We reject also the prosecution’s attempt to bring the 84-day delay within the exception to the 180-day time requirement set out in subdivision (a) of article III of the agreement — “provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance”. In this case the causes for the adjournments were Suffolk County’s persistence in not returning defendant to Queens County for the proceedings pending against him there, coupled with the failure of the Queens County authorities to enforce the several orders for his return which they had obtained, neither of which constituted “good cause” within the contemplation of the Agreement on Detainers.
 

 The fact that defendant’s detention in Suffolk County did not toll the running of the statutory trial period does not, however, mean that all of the 84 days are ineluctably to be included in the computation of the 180-day period. Defendant himself recognizes that when an omnibus motion is made a reasonable time for response by the prosecution may be excluded in the computation of the period of delay chargeable to the People following a request for disposition of outstanding charges
 
 (People v Chiofalo,
 
 73 AD2d 673). Excludable, too, may be the period for decision of the motion by the Judge by whom it was heard. Thus, Supreme Court itself said here, “Some of the delay occasioned by the court’s considering and deciding the defendant’s motion is also excludable as being reasonable and necessary”. The period to be excluded is not, however, a normal time reasonably to be assigned to the disposition of a similar
 
 *128
 
 motion. It is the period of delay, if any, which in the individual case may be actually ascribed to consideration and determination of the particular motion (cf.
 
 People v Sturgis,
 
 38 NY2d 625 [absence of defendant must have caused delay to be excluded under CPL 30.30, subd 4, par (c)]).
 

 No decision was made by either of the courts below as to what period following the making of defendant’s omnibus motion on November 13, 1978 and prior to the District Attorney’s first request on February 5, 1979 for an adjournment to procure a copy of the Grand Jury minutes should be charged against defendant as a reasonable and necessary delay brought about by his motion. The case must therefore be returned to the Appellate Division for a determination of this question (either by it initially or after remittal to the Supreme Court). If it is found that less than 10 days of that interval are chargeable to defendant as a consequence of his omnibus motion, then defendant’s motion to dismiss for failure of compliance with the Agreement on Detainers should be granted. On the other hand, if it is found that the period chargeable to defendant is 10 days or more, the case should be remitted for a new trial because of the error in denial of suppression of the testimony by Detective Saia as to defendant’s statement made to him in the absence of counsel
 
 (People v Rogers,
 
 48 NY2d 167).
 

 A comparison of the statement testified to by Detective Saia with that made by defendant to his sister and testified to by her demonstrates that the error in denial of suppression with the consequent receipt of the police officer’s testimony on trial was not harmless beyond a reasonable doubt. The statement given to Saia when the detective imperpiissibly questioned defendant in the absence of counsel at Trenton State Prison on August 22, 1978, included a detailed account of his activities on the night of the Lopez homicide and for some weeks following. It recited that on the night of the homicide after he had lost all his money gambling he walked the streets all night; that about 6:30 a.m. he saw Lopez standing next to a car with the door open and the motor running; that he then walked over to the victim, pulled out a .22 caliber revolver he was
 
 *129
 
 carrying and “pointed it right at [Lopez’] chest”, telling him “I’m not going to hurt you. All I want is your money”; that Lopez grabbed for the gun which then went off and the victim fell; that, believing the man was not hurt very badly, he tried to prop him up by a tree but the man fell over; that he then realized Lopez was badly hurt, whereupon he took the victim’s wallet from his pocket, jumped in the car and drove it off; that a day or two later he sold tools from the victim’s car to two acquaintances from whom he received “coke”, some of which he used himself and some of which he sold; that the day- after the homicide he disposed of the gun by giving it to a person known to him; and that a few days later he flew to Puerto Rico under an assumed name, returning a week or so later first to sleep in doorways and in the street and ultimately to stay with his sister.
 

 Detective Saia testified that he made notes of the statement as it was given and read them back verbatim to defendant, asking that he correct any error if there was one. The witness said that he had consulted his notes before giving his testimony about the statement at the trial.
 

 By contrast to the statement related by the police officer, defendant’s sister testified that when defendant was at her home a few weeks after the homicide he told her only that “he had killed — he was — he had no money, and he had — he was hungry and cold, and he was around — he told me it happened in Queens somewhere, or by Highland Park, and he got — he told me he got into the car with this man, and he asked him for his money, and the man — they struggled with a gun, and he shot the man, the gun went off, and he got out of the car, and he took the man out of the car and threw him, and got back in the car and left.”
 

 Strikingly absent from the statement testified to by the sister is any explicit admission of a robbery or attempted robbery at gunpoint (sufficient to form the predicate for defendant’s conviction of felony murder), or of defendant’s possession and production of the weapon which brought about the death of Lopez, as well as of defendant’s after-the-event conduct by way of disposing of the gun and leaving the country under an assumed name — all of
 
 *130
 
 which, taken with the fact that Saia testified from a contemporaneous written record of the statement made to him, might well have weighed heavily with the jury in its determination of defendant’s guilt of the crimes of which he was convicted. The error in the refusal to suppress the detective’s concededly inadmissible testimony could scarcely have been harmless beyond a reasonable doubt in these circumstances
 
 (People v Schaeffer,
 
 56 NY2d 448;
 
 People v Garofolo,
 
 46 NY2d 592;
 
 People v Crimmins,
 
 36 NY2d 230, 237-238).
 

 For the reasons stated, the order of the Appellate Division should be reversed and the case remitted to it for further proceedings in accordance with this opinion.
 

 Chief Judge Cooke and Judges Jasen, Wachtler, Meyer, Simons and Kaye concur.
 

 Order reversed, etc.
 

 [1]
 

 . The notice of motion served on November 1, 1978 sought a variety of relief, including inspection of the Grand Jury minutes and dismissal of the indictment, discovery of expert reports, of physical evidence seized from defendant, of statements made by defendant, and of exculpatory evidence to which defendant was entitled under
 
 Brady v Maryland
 
 (373 US 83), and a bill of particulars. By his answering affidavit of November 6, 1978 the District Attorney consented to an
 
 in camera
 
 inspection of the Grand Jury minutes and appears either to have consented to or furnished the other items requested, with the exception of
 
 Brady
 
 material, of which he said none existed.
 

 [2]
 

 . Without elaboration, the court added that “[t]his period is not clearly ascertainable”.