196 N.J. Super. 102 (1984)
481 A.2d 599
THE STATE OF NEW JERSEY
v.
ANTHONY BINN, DEFENDANT.
Superior Court of New Jersey, Law Division Monmouth County.
Decided April 9, 1984.
*103 John T. Mullaney, Jr. for defendant.
Alton Kenney, Assistant Prosecutor for the State (John A. Kaye, Monmouth County Prosecutor, Stephen Pascarella, Legal Assistant, on the brief.)
McGANN, Jr., J.S.C.
Defendant, Anthony Binn, moves to dismiss the charges contained in the above indictments on the ground that to permit further prosecution would violate the Interstate Agreement on Detainers. N.J.S.A. 2A:159A-1 et seq.
Indictment 1776-80, charging Binn with armed robbery, aggravated assault and related charges, was returned by the Grand Jury on September 15, 1981. The arraignment date was listed for October 2, 1981. Binn's whereabouts were unknown. The court directed that a warrant for his arrest issue based on the indictment. The usual teletype notifications were given.
*104 Indictment 1191-81, charging Binn and two co-defendants with burglary, theft and conspiracy, was returned June 3, 1982. At that time it was known that Binn was jailed at Rikers Island in New York City. An arrest warrant issued as before with teletype notification.
Indictment 1320-81, charging Binn with armed robbery, was returned June 24, 1982. The Monmouth County Prosecutor knew that Binn was being held at Rikers Island. An arrest warrant issued as before with teletype notification.
On each of the indictments subsequent arraignment dates were scheduled but on each date it was noted on the record that the defendant was still in custody in New York and that detainers[1] had been filed with the New York Custodial authorities.
In the fall of 1982 Binn was tried in New York, convicted of homicide and sentenced to life imprisonment. On March 3, 1983 he was received at the Sing Sing Correctional Facility  part of the New York State Department of Correctional Services. It is apparent that when received there he was advised of the outstanding New Jersey detainers. On March 30, 1983, pursuant to the Interstate Agreement on Detainers, he filed with the Sing Sing authorities his Notice of place of imprisonment and request to the Monmouth County Prosecutor that final disposition be made of the charges contained in the three indictments. That Notice and Request was forwarded to the Monmouth County Prosecutor and received April 8, 1983. See N.J.S.A. 2A:159A-3(a) and (b). The Monmouth County Prosecutor promptly, on April 12, 1983, responded to the Commissioner of the Department of Correctional Services and to the Superintendent of Sing Sing with the requisite form of acceptance of *105 temporary custody and specifically requested temporary custody for May 16, 1983 for trial to commence May 30, 1983. See N.J.S.A. 2A:159A-4 and 5.
In response dated April 25, 1983 and received April 27, 1983, the Monmouth County Prosecutor was advised by the Ossining Correctional Facility (Sing Sing) as follows:
 RE: Anthony Binn
 TI # 83-A-0780
 Interstate Agreement on
 Detainers
Dear Sir:
We are in receipt of your Form VI, Agreement on Detainers.
Please be advised that the above-named inmate has had to be produced in Court on a Court Order, and to date is still "Out to Court" on a case. He will not be able to be picked up on your Form VI until his case has been resolved.
As soon as he has completed his Court appearance, we will proceed with the Interstate Agreement.
The records of the Ossining Correctional Facility show that Binn was received at Sing Sing on March 3, 1983 and thereafter was moved as follows:
3/3/83 received from Downstate Correctional Facility
3/10/83 out to court
3/22/83 returned from court
4/25/83 out to court
5/31/83 returned from court
6/13/83 out to court
8/5/83 returned from court
8/29/83 out to court
9/20/83 returned from court
9/26/83 out to court
9/30/83 returned from court
10/7/83 out to court
12/3/83 returned from court
12/6/83 transferred to Clinton Correctional Facility
The movements "out to court" were to take care of other pending charges which he then had in New York State. His transfer to the Clinton Correctional Facility occurred after those charges had been disposed of. During the period from *106 April 1983 through November 1983 the Monmouth County Prosecutor's Office was in touch with the Sing Sing officials periodically (as arraignment dates on the indictments were relisted) seeking to discover when Binn would be made available to this jurisdiction. Each time the advice received was that he was "out to court".
By letter of February 6, 1984 from the Clinton Correctional Facility to the New Jersey Department of Corrections (a copy of which was received by the Monmouth County Prosecutor on February 14, 1984) New Jersey was advised that Binn was available for transportation. Arrangements were made; Binn was returned to Monmouth County on February 23, 1984 and arraigned on all three indictments on February 24, 1984. Counsel was assigned through the Office of the Public Defender. Trial dates were set respectively for March 19, March 26 and April 2, 1984.
This motion was then filed.
Defendant relies on N.J.S.A. 2A:159A-3(a), which provides that a defendant "shall be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction, written notice of the place of his imprisonment and request for a final disposition to be made of the indictment." That written notice was received by the Monmouth County Prosecutor on April 8, 1983. The trial dates fixed are obviously beyond 180 days from that date. Must the indictments, then, be dismissed? They need not.
It is essential in reading the various technical requirements of the Interstate Agreement on Detainers that one understand the problem it was meant to address and alleviate. A detainer for unresolved out-of-state charges is recognized as causing "uncertainties which obstruct programs of prisoner treatment and rehabilitation" for one who has been imprisoned. N.J.S.A. *107 2A:159A-1.[2] The purpose of the Agreement is "to encourage the expeditious and orderly disposition" of those out-of-state charges so that the detainers will be removed. In other words an interstate detainer, just as an intra-state detainer, causes one who has been given a custodial sentence on other charges to be held "at the ready" to respond to other courts on other pending charges rather than to receive a permanent placement in the correctional system. There was nothing unusual, for example, in the holding of Binn at Sing Sing (with its proximity to New York City and the courts where other charges were pending) rather than sending him upstate to the Clinton facility at Dannemora where he ultimately was placed to serve his life sentence. The logic of avoiding the logistical problem of an immediate upstate placement is clear. From the prisoner's standpoint that temporary holding does deprive him of access to rehabilitative programs and to work credits available only at his permanent abode. Whether in-state or out-of-state, a detainer has that same effect. To some degree the problem is unavoidable and is caused by the fact that the prisoner has been indicted for a number of crimes. His situation becomes unfair when State inaction exacerbates the length of his temporary situation. Local speedy trial rules framed to meet Sixth Amendment mandates are available to address the in-state detainer.
In similar fashion the Interstate Agreement was intended to address the problem of the out-of-state detainer. It was not meant to prevent an accused from coming to trial on valid out-of-state charges. Neither was it intended to intrude on the legitimate actions of the sovereign signatories in protecting the interests of their citizens and in vindicating their laws first. The oft-used phraseology that "the Act is remedial and should *108 be accorded liberal construction in favor of prisoners within its purview"[3] was not intended to change that basic concept.
The defendant argues that because New York was expeditiously moving other pending charges against him after he served his request for final disposition of the New Jersey charges that those New Jersey charges must be dismissed and prosecution frustrated. The framers of the Act intended no such irrational result. Once a prisoner is found "within the purview of the act" he is of course entitled to its benefits including dismissal of otherwise valid indictments. The question is, what does that expression mean?
The 180-day period is not absolute. When brought to the receiving state the prisoner may have many charges pending, all of which cannot humanly be tried within 180 days. The Act provides for a "necessary and reasonable continuance" on a showing of "good cause" "in open court, the prisoner or his counsel being present." N.J.S.A. 2A:159A-3(a). That continuance can be granted only after the prisoner has been brought to the receiving state. In Binn's cases New Jersey did not have him and he did not have counsel to appear for him.[4]
N.J.S.A. 2A:159A-6(a) is the legislative safety valve to prevent miscarriages of justice resulting from literal applications of the Act. It provides:
In determining the duration and expiration dates of the time periods provided in Articles III and IV of this agreement, the running of said time periods shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter.
The prisoner does not come "within the purview of the Act" so long as he is "unable to stand trial". Whether he is in fact unable to stand trial in the receiving state is to be determined by the court in the receiving state.
*109 Despite his request of March 30, 1983 to be transported to New Jersey to stand trial on the within indictments, Binn was, in fact, unable to stand trial in New Jersey because of the legitimate claim of New York to hold him to dispose of the remaining New York charges. There was literally nothing New Jersey could do to compel delivery of the prisoner. This Act was never intended to benefit one who still had outstanding charges against him in the sending state. In the sense of the Act, Binn was unable to stand trial in New Jersey until December 6, 1983[5] when his New York charges had been resolved. For that period of time the running of the 180 day period was tolled. The 180-day period began to run December 6, 1983 and continued until this motion was filed on March 23, 1984. Time was then tolled until April 9, 1984 when the motion was decided and will run thenceforth.
The motion to dismiss is denied.
NOTES
[1] A "detainer" for purposes of the Interstate Agreement on Detainers is not a hold order. Rather it is a notification filed with the institution in which a prisoner is serving a sentence advising that he is wanted to face pending criminal charges in another jurisdiction. United States ex rel Esola v. Groomes, 520 F.2d 830, 838 (3d Cir.1975).
[2] See State v. Lippolis, 107 N.J. Super. 137 at 149 (App.Div. 1969).
[3] State v. Lippolis, 101 N.J. Super. 435 (Law Div. 1968), aff. 107 N.J. Super. 137 (App.Div. 1969), rev. on dissent 55 N.J. 354 (1970); State v. Mason, 90 N.J. Super. 464 (App.Div. 1966)
[4] Cf. State v. Lippolis, above, 107 N.J. Super., dissent, at 147.
[5] Cf. State v. Lippolis, above, 107 N.J. Super. at 141-2.