OPINION OF THE COURT
Norman W. Felig, J.
Defendant moves to dismiss indictments Nos. 88/1982 and 28/1984 based upon the People’s alleged noncompliance with the specific time periods set forth in Interstate Agreement on Detainers articles III and IV (CPL 580.20). It is not disputed that the defendant formally requested his return for a final disposition of his pending New York charges on or about April 23, 1984, and that his request was received in the Richmond County District Attorney’s office on or about April 28, 1984. He has not yet been brought to trial. The motion is granted and the indictments are dismissed.
On March 19, 1982, the defendant herein, Nazif Vrlaku, was charged under Richmond County indictment No. 88/1982 with assault in the first degree and related offenses in connection with the alleged shooting of his father-in-law on or about October 16, 1981. The case, thereafter, appeared on the court’s calendar several times prior to February 24, 1983, when the case was again adjourned to March 8, 1983, as a control date for trial. During the interim, however, and on February 27, 1983, the defendant, who was free on bail, allegedly shot at and injured his father-in-law for a second time, whereupon he took flight from the jurisdiction. Subsequently, and on March 8, 1983, a bench warrant was issued when the defendant failed to appear in court as scheduled. As will be seen, upon fleeing the jurisdiction of Richmond County, the defendant embarked upon a crime spree stretching from Illinois to Texas and including Florida and New York.
On December 6, 1983, the defendant was arrested by Illinois authorities in Chicago on drug charges and for possession of a weapon, whereupon a request was made by the Richmond County District Attorney’s office for the defendant’s extradition. Such request was forwarded to the Governor of Illinois on or about February 7, 1984, but apparently, before it could be acted upon, the defendant pleaded guilty to the Illinois charges and on April 10, 1984 was sentenced to an indeterminate term of imprisonment of 3 to 6 years. As a result of the foregoing, the District Attorney was informed shortly after the date of sentencing that their request for extradition would *380 not be honored, and they were advised to proceed by way of the Interstate Agreement on Detainers (CPL 580.20). In the meantime, the defendant was indicted in Richmond County, inter alia, for attempted murder in the second degree and bail jumping in the first degree on January 27, 1984, under indictment No. 28/1984, and April 17, 1984 under indictment No. 110/1984, respectively, so that the total number of outstanding indictments pending against the defendant in Richmond County had risen to three.
On or about April 17, 1984, the District Attorney served a request upon the Warden of the Joliet Correctional Facility to obtain temporary custody of the defendant in accordance with Interstate Agreement on Detainers article IV (a) (CPL 580.20). Six days later, the defendant signed and had forwarded to the District Attorney a request for disposition of indictments Nos. 88/1982 and 28/1984 pursuant to Interstate Agreement article III (a). This request was received on or about April 28, 1984. On May 3, 1984, the District Attorney commenced proceedings to obtain the return of the defendant from Illinois pursuant to the Interstate Agreement, but on May 9, 1984, was advised that the defendant had been taken into custody by United States Marshals and transferred to a Federal detention facility in Dallas, Texas. Contact was made with the Federal authorities in Dallas, and it was learned that other Federal charges were pending against the defendant in Florida and in the Southern District of New York.
Unbeknownst to the District Attorney, on August 9, 1984, the defendant pleaded guilty to the Federal charges in Dallas and was sentenced to 15 years in prison. He was then transferred from Texas to the Metropolitan Correctional Facility in the Southern District of New York. The District Attorney was notified of this transfer on or about August 29,1984. When he, thereafter, attempted to secure the defendant’s temporary release from Federal custody pursuant to Interstate Agreement article IV, he was informed that his request could not be honored since the defendant had not, as yet, been sentenced in the Southern District. The defendant, subsequently, pleaded guilty in the Southern District of New York and was sentenced to eight years in prison on August 14, 1985. At this point, another request to obtain temporary custody of the defendant, pursuant to the Interstate Agreement on Detainers, was served by the District Attorney, and he was informed, inter alia, that the defendant was already en route back to Illinois, where he arrived on or about October 16, 1985. He *381 was picked up by agents from the District Attorney’s office on December 4, 1985 and was produced before this court on December 5, 1985, to answer the Richmond County charges. The cases were, thereafter, adjourned on several occasions at the request of, or, with the consent of the defendant to accommodate the defendant’s attorneys, who were engaged in a protracted trial in the Southern District, so that the instant motion could be made.
As has already been indicated, the motion is granted.
In attempting to determine the merits of this motion, the court has been able to discern three possible grounds upon which the defendant might hope to rely in requesting dismissal:
1. That he has not been brought to trial within 180 days after the delivery upon the prosecution of his request for a final disposition of the pending indictments, as required by Interstate Agreement on Detainers article III (a);
2. That the People have failed to bring him to trial on the pending indictments within 120 days after his return to New York pursuant to their request for temporary custody, as required by Interstate Agreement on Detainers article IV (c); and
3. That the return of the defendant to the Illinois authorities following his Federal conviction in the Southern District of New York and prior to any adjudication of the Richmond County charges, mandates the dismissal of the indictments in accordance with Interstate Agreement on Detainers articles III (d) and IV (e).
The court will consider each of these contentions in reverse numerical order.
Beginning with a consideration of the last of these three contentions, it might be argued in support of dismissal that the defendant’s production in New York to face Federal charges in the Southern District in August of 1984 constituted his "return” to this State for purposes of the Interstate Agreement on Detainers, which would in turn, render his subsequent return to Illinois in October of 1985 following his Federal conviction and prior to any adjudication of the Staten Island charges, a "return” to his "original place of imprisonment” within the meaning of Interstate Agreement articles III (d) and IV (e). Both such subdivisions provide, in substance, that if a trial is not had on any pending indictment in the receiving State prior to the prisoner’s return to his original *382 place of incarceration (i.e., the sending State), then any such indictment or indictments shall be of no further force or effect "and the court shall enter an order dismissing the same with prejudice”.
In this case, however, the foregoing contention is neither seriously pressed nor sustainable, as Interstate Agreement article II (a) specifically provides that, when used in the agreement, the term "state” shall mean, inter alia, "a state of the United States [or] the United States of America”. Thus, under the terms of the agreement itself, the defendant’s presence in Federal custody in the Southern District of New York, did not constitute his presence in the State of New York for purposes of any State prosecution, and he did not achieve such presence until he was returned from Illinois in the custody of Richmond County law enforcement officials on or about December 4, 1985 (see, United States v Bryant, 612 F2d 806, 810 [4th Cir 1979]). Since that time he has not been returned to Illinois.
Turning to a consideration of the second of these possible grounds, the defendant cannot successfully argue that the indictments should be dismissed because he has not been brought to trial within 120 days after his arrival in the receiving State (New York) as required by Interstate Agreement on Detainers article IV (c). This is so because the defendant was only returned to New York pursuant to the People’s request on December 4, 1985, and since that time, all of the delays in the prosecution have been as the result of adjournments sought, or consented to, by the defendant. It is well established that reasonable continuances granted at the behest of the defendant or with his consent are not chargeable to the prosecution in cases arising under the Interstate Agreement on Detainers (see, People v Rivera, 84 AD2d 541; People v Chiofalo, 73 AD2d 673; People v Cook, 63 AD2d 841). Excising such periods, the 120 days set forth in the statute has yet to expire.
The situation is far different, however, with respect to the remaining ground for dismissal, for while the prosecution contends, and the defendant effectively conceded at oral argument, that the People have not been remiss in their efforts to secure the defendant’s return to Richmond County within the confines of the procedural mechanisms available to them under article IV of the Interstate Agreement on Detainers, the exercise of reasonable diligence under article IV is not a recognized excuse for the failure to bring a defendant to trial *383 within the time set forth in Interstate Agreement article III. In fact, within the confines of the agreement itself, it appears that there are only two statutorily recognized exceptions to the requirement in article III (a) that a defendant be brought to trial within 180 days "after he shall have caused to be delivered to the prosecuting officer * * * written notice of the place of his imprisonment and his request for a final disposition” of the pending charges:
1. The provision in article III (a) of the Agreement, that "for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance” (emphasis supplied); and
2. The provision in article VI (a) that "[i]n determining the duration and expiration dates of the time periods provided in Articles III and IV of this agreement, the running of said time periods shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter” (emphasis supplied).
Clearly, none of the periods of delay encountered in this case, prior to the defendant’s return on December 4, 1985, was the result of a "continuance” granted in accordance with the first of these two exceptions, for at no time did the District Attorney make the required showing of good cause "in open court, the [defendant] or his counsel being present”. As to the second, the Court of Appeals has held that "[i]n interpreting the running of the 180-day period, after which trial is barred, when [the] defendant is 'unable to stand trial’, the statute [CPL 580.20] is reasonably to be interpreted as contemplating a disability attributable to the defendant or his attorney * * * [and] do[es] not encompass a situation * * * in which the unavailability for trial is occasioned not by the condition or conduct of the defendant but [rather] by the People of the State in their prosecutorial capacity” (People v Torres, 60 NY2d 119, 126). In this regard, it would not appear that the fact that the defendant may have been called upon to answer for other crimes committed in other jurisdictions is a "disability” attributable to the "condition or conduct” of the defendant within the meaning of People v Torres (supra), for in that case, the Queens County prosecutor unsuccessfully attempted to argue that the 180-day period prescribed in Interstate Agreement article III (a) had been "tolled” by reason of the defendant’s inability to stand trial in that county while being physically detained in Suffolk County for the purpose of *384 answering additional charges pending against him there (People v Torres, supra, pp 125-127).
Interestingly, the People in this case do not even attempt to argue that the defendant was wholly beyond their reach while in Federal custody at the Metropolitan Correctional Facility in Manhattan, and freely concede that his presence in Richmond County could have been obtained by way of a writ of habeas corpus ad prosequendum (CPL 580.30 [2]). In defense of their decision not to proceed in this manner, however, the People merely contend that had they chosen to do so, the 120-day period set forth in Interstate Agreement article IV (c) would have started to run upon his production in Richmond County (see, United States v Mauro, 436 US 340), and that they would therefore have been placed in the "precarious position” of having to rely upon the Federal authorities, in whose physical custody the defendant would have remained under the writ, to produce him as needed in State court. This, they implicitly contend, would have been courting disaster, as the Federal authorities "had previously exhibited a total disregard for the needs of Richmond County”, presumably, by refusing to surrender temporary custody of the defendant to them in response to the People’s request pursuant to article IV (a). There are several fallacies in this argument.
First, article IV (a) specifically restricts its applicability to situations in which a detainer has been lodged against a prisoner who is "serving a term of imprisonment” in the custodial State. Accordingly, it is arguable that the defendant did not fall within this statutory language while being detained as a prisoner in the Southern District of New York awaiting trial (see, United States v Bryant, 612 F2d 806, 810, supra [each Federal district regarded as a separate "state” for purposes of the Interstate Agreement on Detainers]), and the refusal to surrender temporary custody of the defendant may have been perfectly proper. Secondly, the People’s argument freely assumes that the Federal authorities would not have cooperated in producing the defendant as required in Richmond County, an assumption which is both highly speculative and totally devoid of any factual support. Thirdly, and most importantly, however, is the fact that the People’s argument overlooks a statutory nuance in the Interstate Agreement as regards a Federal prisoner, i.e., that pursuant to article V (a) thereof, "[i]n the case, of a federal prisoner, the appropriate authority in receiving state shall [either] be entitled to temporary custody [of the prisoner] as provided [elsewhere in] this *385 agreement or to the prisoner’s presence in federal custody at the place for trial, whichever custodial arrangement may be approved by the [Federal] custodian” (emphasis supplied). Accordingly, without more, the People could not have been certain that the defendant would have been released to their custody in response to their request under article IV (a), and the possibility of the defendant’s remaining in Federal custody existed under both the Interstate Agreement (CPL 580.20) and a writ of habeas corpus ad prosequendum (CPL 580.30 [2]). Finally, had the defendant actually been produced pursuant to a writ and the lack of cooperation by Federal authorities posed a threat to the People’s ability to bring the defendant to trial within the statutorily mandated 120 days, the People could always have applied to the court for a continuance under Interstate Agreement article IV (c), which provides, inter alia, that with respect to any proceeding commenced pursuant to article IV of the Agreement, the court "having jurisdiction of the matter” may "for good cause shown in open court, the prisoner or his counsel being present * * * grant any necessary or reasonable continuance” (emphasis supplied).
Since it is clear in this case that the defendant was available to the prosecution during most, if not all, of the 14-month period during which he was housed at the Metropolitan Correctional Facility, i.e., from August of 1984 to October of 1985, and that no other statutorily cognizable excuse has been tendered for the People’s failure to proceed to trial within this 14-month period, it appears to this court that the defendant’s statutory right to be brought to trial within 180 days of his demand as required by Interstate Agreement article III (a) has been violated, and that the court is constrained to dismiss indictments Nos. 88/1982 and 28/1984, with prejudice, pursuant to article V (c) thereof (see, People v McBride, 44 NY2d 1001; People v C’Allah, 100 AD2d 754). In so doing, the court is not unmindful of the seriousness of the charges recited in these indictments, but is nevertheless constrained by its understanding of the applicable statutory and decisional law.