THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v NAZIF VRLAKU, Respondent.

Second Department, January 11, 1988

## APPEARANCES OF COUNSEL

*William L. Murphy, District Attorney (Karen F. McGee* and *Yolanda L. Rudich* of counsel), for appellant.

*DePetris & Meyer (Stanley M. Meyer* of counsel), for respondent.

## OPINION OF THE COURT

MANGANO, J. P.

The question to be resolved on the instant appeal is whether the People of the State of New York failed to comply with the 180-day limitation period set forth in subdivision (a) of article III of the Interstate Agreement on Detainers (CPL 580.20, art III [a]). This question must be answered in the negative.

### I

On March 19, 1982, the defendant was indicted by the Richmond County Grand Jury for the crime of assault in the first degree and related charges under indictment No. 88/82 in connection with the alleged shooting of his father-in-law on or about October 16, 1981. The case thereafter appeared on the court's calendar several times and on February 24, 1983, it was adjourned to March 8, 1983, as a control date for trial. During the interim, and while free on bail, the defendant allegedly shot at his father-in-law a second time, whereupon he fled the jurisdiction and embarked on a nationwide crime spree.

On December 6, 1983, the defendant was arrested in Chicago, Illinois, on drug and weapons possession charges. A request for the defendant's extradition to Richmond County was forwarded to the Governor of Illinois on or about February 7, 1984, but before that request could be acted upon, the defendant pleaded guilty to the Illinois charges, and on April 10, 1984, the defendant was sentenced to an indeterminate term of 3 to 6 years' imprisonment in the Illinois State prison. The District Attorney of Richmond County was informed shortly thereafter that his request for extradition would not be honored, and was advised to proceed by way of the Interstate Agreement on Detainers (hereinafter the Agreement) (CPL 580.20). In the meantime, the defendant was indicted on January 27, 1984, by the Richmond County Grand Jury for attempted murder in the second degree and related charges under indictment No. 28/84, in connection with the alleged shooting of his father-in-law on February 27, 1983.

On April 17, 1984, the Richmond County District Attorney served a request upon the Warden of the Joliet (Illinois) Correctional Facility to obtain temporary custody of the defendant in accordance with subdivision (a) of article IV of the Agreement. Subdivision (a) of article IV of the Agreement provides as follows:

### "ARTICLE IV

"(a) The appropriate officer of the jurisdiction in which an untried indictment, information or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party state made available in accordance with Article V (a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated".

Six days later, the defendant, pursuant to subdivision (a) of article III of the Agreement, signed and forwarded a request for final disposition of indictments Nos. 88/82 and 28/84, which was received by the Richmond County District Attorney's office on April 28, 1984.

On May 3, 1984, the Richmond County District Attorney prepared and forwarded the necessary papers to the State of Illinois to obtain the defendant's return to Richmond County.

On May 9, 1984, the Richmond County District Attorney was advised that the defendant had been taken into Federal custody on May 8, 1984, and had been transferred to a Federal detention facility in Dallas, Texas, to answer outstanding Federal drug charges there. Upon contacting the Federal authorities in Dallas, the Richmond County District Attorney was advised that other Federal charges were pending against defendant in Florida and in the Southern District of New York. The defendant pleaded guilty in the United States District Court, Northern District of Texas, to distribution of cocaine, and on August 9, 1984, was sentenced in Dallas to a 15-year prison term to run consecutively to the term of 3 to 6 years' imprisonment imposed by the State of Illinois. Thereafter, the defendant was transferred from Texas to the Metropolitan Correctional Facility in the Southern District of New York in order to answer the outstanding Federal charges against him in that district. The Richmond County District Attorney was advised of the defendant's status on August 29, 1984, and served a request for temporary custody on the

Federal authorities at the Metropolitan Correctional Center, but that request was rejected because the defendant was a pretrial detainee in the Southern District of New York and not a sentenced prisoner, as required by subdivision (a) of article IV of the Agreement.

After several pretrial conferences and hearings, the defendant's trial in the United States District Court, Southern District of New York, began on October 29, 1984, and continued through December 7, 1984, when a mistrial was declared. During the ensuing months, the defendant and his attorney engaged in pretrial conferences, and the case was scheduled for disposition on April 29, 1985. On May 8, 1985, the defendant pleaded guilty to conspiring to distribute and possess cocaine, and on August 14, 1985, he was sentenced to a term of eight years' imprisonment to run concurrently with the sentence imposed in the United States District Court, Northern District of Texas.

Thereafter, the defendant was transferred back to the State correctional system of Illinois and arrived there on October 16, 1985.

On December 4, 1985, the defendant was picked up in Illinois by agents from the Richmond County District Attorney's office and produced in the Supreme Court, Richmond County, the next day to answer the Richmond County charges.

## II

Criminal Term granted the defendant's motion to dismiss the indictments on the ground that the People had not brought the defendant to trial within 180 days after the delivery upon the prosecution of his request for a final disposition of his pending indictments in Richmond County, as required by subdivision (a) of article III of the Agreement (132 Misc 2d 378). Subdivision (a) of article III of the Agreement provides:

### "ARTICLE III

"(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall

have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint".

In so holding, Criminal Term rejected the People's argument that the 180-day limitation period provided for in subdivision (a) of article III of the Agreement was tolled, pursuant to subdivision (a) of article VI of the Agreement, during the period that the defendant was in Federal custody in Texas and New York (which are considered as separate States under the Agreement) *(see, United States v Bryant,* 612 F2d 806, 810), awaiting disposition of Federal charges. Subdivision (a) of article VI of the Agreement, relied on by the People, provides: "(a) In determining the duration and expiration dates of the time periods provided in Articles III and IV of this agreement, the running of said time periods shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter".

Criminal Term erred in holding that the People were not entitled to the benefit of the tolling provision of subdivision (a) of article VI of the Agreement.

In *Young v Mabry* (471 F Supp 553, *affd* 596 F2d 339), the State of Arkansas lodged a detainer against the defendant while he was in Federal custody serving a Federal sentence in Atlanta, Georgia. After receiving the defendant's request for final disposition of his State charges, but before being brought back to Arkansas to face that State's charges, the defendant was produced by the Federal authorities in the United States District Court, Eastern District of Arkansas, to face Federal charges filed against him in that jurisdiction. The court held that the period during which defendant was in Federal custody in the Eastern District of Arkansas awaiting trial therein on Federal charges had to be excluded from the 180-day limitation period provided for in subdivision (a) of article III of the Agreement (CPL 580.20, art III [a]).

In *United States v Mason* (372 F Supp 651 [ND Ohio 1973]), the United States Attorney in Toledo, Ohio, received a request for final disposition from the defendant who was incarcerated in the Ohio State Reformatory. Four days later, the defendant was transferred to the State of Michigan to stand trial for armed robbery and was not returned to Ohio until after he was convicted and sentenced, some five months later. The

court reached "the only logical result" and excluded the period when the defendant was in Michigan custody "since if a person is standing trial in one state he cannot be expected to be standing trial in another state simultaneously" *(United States v Mason, supra,* at 653).

In *State v Binn* (196 NJ Super 102, 481 A2d 599, *mod* 208 NJ Super 443, 506 A2d 67), the defendant was tried and convicted of murder in New York. A month after sentence was imposed, the defendant demanded final disposition of three outstanding indictments in Monmouth County, New Jersey. New York refused to honor New Jersey's request for temporary custody because the defendant had other unresolved charges remaining in New York. Consequently, the defendant was not returned to New Jersey until after 180 days had elapsed. The New Jersey courts deemed the defendant unable to stand trial in New Jersey while imprisoned in New York on the unresolved charges. The tolling provision of subdivision (a) of article VI was applied by the New Jersey court to prevent a miscarriage of justice which would result when a defendant has numerous cases pending in several jurisdictions "all of which cannot humanly be tried within 180 days" *(State v Binn, supra,* 196 NJ Super, at 108, 481 A2d, at 602; *see also, Spears v State,* 280 Ark 577, 660 SW2d 913). These authorities are clearly applicable to the similar fact pattern at bar and mandate reversal of the order appealed from and reinstatement of the subject indictments.

The case relied on by Criminal Term to support its determination that no tolling occurred in the case at bar, i.e., *People v Torres* (60 NY2d 119), is inapposite. In *People v Torres (supra),* the defendant was returned to Queens County from New Jersey on October 5, 1978. Prior to his return, the defendant executed a request for final disposition of the Queens County charges, thus triggering the 180-day period within which his trial had to begin under subdivision (a) of article III of the Agreement. The crucial period in dispute was an 84-day period between November 13, 1978, to February 5, 1979, when the defendant was in Suffolk County pursuant to a writ of habeas corpus secured by the Suffolk County authorities. The record in *People v Torres (supra)* indicates that orders for the defendant's return were issued by the Supreme Court, Queens County, on numerous occasions, but they were thwarted by the authorities in Suffolk County. Under these circumstances, the Court of Appeals held that the 84 days were chargeable to the People since the "[d]efendant is not to be disadvantaged by

reason of factionalism of the prosecutorial arm of the State" *(People v Torres, supra,* at 127). In the case at bar, we are not confronted with factionalism between prosecutorial arms of the same jurisdiction, as occurred in *People v Torres (supra),* but with the bona fide concerns of separate jurisdictions regarding the efficient administration of justice.

## III

In conclusion, from April 28, 1984, the day the defendant's request for final disposition was received by the Richmond County District Attorney, until December 5, 1985, the day the defendant was produced in Richmond County, a total of 586 days elapsed. However, the period from May 8, 1984, through August 14, 1985, when the defendant was in Federal custody awaiting disposition of Federal charges, a total of 463 days, must be excluded from that total *(see, Young v Mabry, supra; Spears v State, supra; State v Binn, supra; United States v Mason, supra).* Thus, the order appealed from must be reversed, the defendant's motion to dismiss the indictments denied, the indictments reinstated, and the matters remitted to the Supreme Court, Richmond County, for further proceedings on those indictments.

WEINSTEIN, KOOPER and HARWOOD, JJ., concur.

Ordered that the order is reversed, on the law, the defendant's motion to dismiss indictments Nos. 88/82 and 28/84 is denied, those indictments are reinstated, and the matters are remitted to the Supreme Court, Richmond County, for further proceedings on those indictments.