OPINION OF THE COURT
Peter P. Rosato, J.
By decision and order dated January 10, 1989, this court, inter alia, granted defendant a hearing insofar as his application to dismiss both of the above-noted indictments wherein defendant stands charged with grand larceny, second degree, and issuing a bad check (indictment No. 84-225) and bail jumping, second degree (indictment No. 86-69), on grounds that defendant’s rights under the Interstate Agreement on Detainers, as codified in New York in CPL 580.20, were violated. More specifically, this court, in its January 10, 1989 decision, ordered a hearing to determine whether or not the *84 Interstate Agreement on Detainers is in fact applicable to this case, and if so, whether defendant’s rights thereunder were violated.
In lieu of an evidentiary hearing, counsel for both sides have entered into a written stipulation setting forth a chronology of dates and events which could have bearing on the Interstate Agreement on Detainers issue, thereby narrowing the issues before the court to issues of law. That stipulation, as amended on the record on March 9, 1989, reads, in substance, as follows:
"On April 16, 1985, the defendant, Vincent Whitely, was arraigned on Indictment Number 84-00225-01 in New York.
"On October 29, 1985 defendant failed to appear for his scheduled court appearance in New York.
"On March 11, 1986 a sealed indictment was returned by the Grand Jury of Westchester County charging the defendant with Bail Jumping in the Second Degree. On that same day a warrant was issued for defendant’s arrest on Indictment Number 86-00069-01.
"On March 19, 1987, defendant was sentenced to a two year state prison term in Somers Connecticut.
"On April 1, 1987 Westchester lodged a detainer in Connecticut on both the original Grand Larceny charge under Indictment Number 84-225 as well as the Bail Jumping charge under Indictment Number 86-0069.
"On May 4, 1987 defendant requested a 'speedy trial’ and final disposition on charges contained in both indictments.
"On May 18, 1987, Westchester sent a 'Request for Temporary Custody’ tForm 5 and Form 6) to the Superintendent of the Connecticut Correctional Facility in Somers Connecticut.
"On May 22, 1987, the Office of the District Attorney in Westchester County was notified in writing by the Connecticut Department of Corrections that custody of the defendant could not be given to Westchester County because the defendant was on trial in Connecticut. The Office of the District Attorney was further apprised that its request would be kept on file and it would be notified when Mr. Whitely could be made available in Court. In fact, the defendant was not on trial, but had four pending cases in Connecticut. [Emphasis added.] The four pending cases were as follows:
"A November 24, 1986 arrest in Newington, Connecticut for Criminal Impersonation, disposed of on September 3, 1987.
*85 "A December 12, 1986 arrest for Criminal Impersonation and Forgery in the Second Degree, disposed of on August 13, 1987.
"A January 20, 1987 arrest in Milford, Connecticut for Forgery in the Third Degree and Larceny in the Third Degree disposed of on July 22, 1987.
"A February 3, 1987 arrest in Meriden, Connecticut for Larceny in the Fourth Degree disposed of June 22,1987.
"Thus, all four cases were disposed of by September 3,
"With respect to these four cases, the defendant had posted bail, but was still incarcerated as a sentenced prisoner.
"On January 27, 1988, the defendant completed serving the sentence imposed on March 19, 1987 and was discharged from the Connecticut Correctional Institute, Somers, Connecticut. Defendant was now free. Defendant was released on an appeal bond. Subsequently his sentence was modified to ten months.
"On May 13, 1988 in Berlin, Connecticut, the defendant was arrested on charges of Larceny in the Fifth Degree and Conspiracy to Commit Larceny in the Third Degree.
"On June 7, 1988, the defendant was arrested in Southington, Connecticut on 42 counts of credit card theft, 21 counts of Larceny in the Sixth Degree, Larceny in the Fifth Degree and Possession of Drug Paraphernalia. This charge was still pending in Southington, Connecticut when defendant arrived in Westchester October 26, 1988.
"From June 14, 1988 to July 13, 1988, the defendant was incarcerated in the Hartford Correctional Center, a pre-trial detention center on the above-mentioned new charges. Defendant was also serving a sentence arising out of the Berlin charge.
"From August 19, 1988 to October 25, 1988 the defendant was incarcerated in various pre-trial detention centers including the Morgan Street Correctional Facility in Hartford, Connecticut.
"On October 21, 1988 the defendant was held in the Morgan Street Correctional Facility in Hartford, on the New York Governor’s Warrant.
On October 21, 1988, the defendant had pending charges in one jurisdiction in Connecticut. These were not the same charges that were pending at the time of defendant’s demand for a speedy trial and final disposition on May 14, 1987. Rather, these were new charges based on the arrest of June 7, *86 1988. These charges were based on crimes the defendant was alleged to have committed after being freed on January 27, 1988.
"Notwithstanding the pending 'new’ charges the defendant was discharged from the Morgan Street Correctional Facility in Hartford Connecticut on October 25, 1988 and returned to New York on the February 1987 Governor’s Warrant [see, CPL 570.12].”
CPL 580.20 provides in pertinent part, at article III thereat, that "[w]henever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state * * * he shall be brought to trial within [180] days after he shall have caused to be delivered * * * his request for a final disposition to be made of the indictment”. In the instant case, it is uncontroverted that defendant, on May 4, 1987, made his request for final disposition of both of the pending indictments. No procedural issue has been raised as to the form of that request (see, by way of contrast, People v Primmer, 59 AD2d 221 [3d Dept 1977], affd 46 NY2d 1048; and Matter of Amiger v Long, 101 AD2d 616 [3d Dept 1984], as cited and discussed in the recent unpublished decision and order of this court dated Feb. 6, 1989 in People ex rel. Davidson v Coughlin, Westchester County indictment No. 88-9445), and so, arguendo, the court, for purposes of the instant motion, shall deem such request to have been procedurally proper.
The People take the position that the 180-day period provided by CPL 580.20, article III is tolled during the time that the defendant was at one and the same time imprisoned in Connecticut, serving his two-year State prison term[1] and was simultaneously facing four separate charges then pending in the State of Connecticut as well. Chronologically, this period of time would run from May 4, 1987, the date of defendant’s request for final disposition of the instant charges, until September 3, 1987, the date the last of the four above-noted pending matters was finally disposed of. Defendant, however, in a supplemental affirmation, refers this court to a 1985 decision of the United States Court of Appeals for the Second Circuit in United States v Roy (771 F2d 54), where the Second Circuit found, inter alia, that the Interstate Agreement on Detainers did in fact apply to defendant Roy who, like defendant herein, was likewise serving a Connecticut State sentence while additional Connecticut charges were simultane *87 ously pending against him as of the time the detainer was lodged.[2] The People, on the other hand, argue that the issues raised in the instant case are controlled by the more recent New York Court of Appeals decision in People v Vrlaku (73 NY2d 800 [1988]), which held that the 180-day time period contained at CPL 580.20 was tolled during the period defendant was detained by Federal authorities on two pending Federal charges.
At the threshold, it is a well-settled principle of statutory construction that "[w]ith respect to conflicting statutory constructions between state and federal courts, the decisions of the former are controlling where no federal question is involved, and this is true regardless of whether the federal court agrees with the interpretation. * * * However, in construing a state statute, the state courts may follow the decisions of federal courts construing the effects of a comparable federal statute.” (See, McKinney’s Cons Laws of NY, Book 1, Statutes § 72, at 144 [emphasis added].) Thus, it appears that while this court could follow the Second Circuit decision in Roy (supra), it is not required to do so. Not being bound by the Second Circuit decision in Roy, and in the face of conflicting, albeit rather limited appellate authority, the court would follow what it perceives to be the more persuasive reasoning expressed by the State Court of Appeals in People v Vrlaku (supra). The Vrlaku court distinguished its earlier opinion in People v Torres (60 NY2d 119), noting that in Torres tolling of the Agreement was not appropriate given the fact that defendant’s unavailability in Torres was occasioned by the People due to "intrastate factionalism” between counties within New York State. No such "intrastate factionalism” occurred in Vrlaku (supra); rather, the Court of Appeals in Vrlaku emphasized that the defendant’s unavailability was due to his own conduct, i.e., by allegedly committing additional crimes in two Federal jurisdictions, defendant had effectively rendered himself unavailable for trial in New York State during the time those Federal charges were pending. Defendant herein simi *88 larly rendered himself unavailable to New York State by virtue of subjecting himself to no less than four separate pending charges in Connecticut arising during the period from November 24, 1986 to February 3, 1987.
A review of the Federal and sister State cases cited by the Vrlaku court is also instructive. Among the cases cited is a New Jersey State court case, State v Binn (196 NJ Super 102, 481 A2d 599, mod 208 NJ Super 443, 506 A2d 67). The facts of Binn are on all fours with the facts of the instant case. Binn, in the autumn of 1982, was convicted on homicide charges in New York State and sentenced to life imprisonment. On March 30, 1983, he filed his "request for disposition” under the Interstate Agreement on Detainers with the Monmouth County, New Jersey, prosecutor regarding pending charges of armed robbery, burglary, et al., in New Jersey. In response, on April 27, 1983, New York (Sing Sing Correctional Facility) advised New Jersey, in essence that defendant could not be produced until other pending charges in New York State were resolved. The Superior Court of the State of New Jersey (McCann, J.) held that Binn was effectively unable to stand trial in New Jersey until December 6, 1983, when his New York charges were disposed of. In so holding, the Binn court ruled that, "This Act [the Interstate Agreement on Detainers] was never intended to benefit one who still had outstanding charges against him in the sending state.” (See, State v Binn, supra, 196 NJ Super, at 109, 481 A2d, at 602.) Significantly, the holding of Binn was modified on appeal only to the extent of a tangentially related point (i.e., whether a plea of guilty waived any argument under the Interstate Agreement on Detainers insofar as that count is concerned). (See, State v Binn, 208 NJ Super 443, 506 A2d 67, supra [1986].) However, insofar as the jugular legal issue presented herein is concerned, the Judges of the Appellate Division unanimously and squarely concurred with the lower court "that a defendant cannot demand disposition under Article III of the Agreement * * * so as to interfere with scheduled proceedings in cases still pending in the 'sending State.’ ” (See, State v Binn, supra, 208 NJ Super, at 448, 506 A2d, at 69 [emphasis added].) Or, to put it differently, the Appellate Division of the New Jersey Superior Court held that "the pending proceedings in the 'sending State’ can be the basis for a continuance or a tolling of the 180 day requirement under Article III” (see, State v Binn, supra, 208 NJ Super, at 449, 506 A2d, at 70). In so holding, the court in Binn went on to comment that, "It can *89 hardly be suggested that a defendant can request speedy trial in various jurisdictions simultaneously and then complain that his Sixth Amendment rights are violated by the absence of contemporaneous dispositions.” (See, State v Binn, supra, 208 NJ Super, at 449, 506 A2d, at 69.)
While the Binn case (supra) appears to be squarely at odds with United States v Roy (771 F2d 54, supra), this court would respectfully suggest that the holding in Roy, on the tolling issue, appears to be rather conclusory in nature. The decisions in Binn and Vrlaku (73 NY2d 800, supra), on the other hand, are in this court’s view reflective of a more reasoned approach insofar as the underlying purposes of the Interstate Agreement on Detainers are concerned.
Thus, following careful review of the relatively few reported cases, this court would adopt the reasoning expressed in Vrlaku and Binn (supra), and would find that the Interstate Agreement on Detainers was tolled herein during the period from May 4, 1987 to September 3, 1987, when the last of defendant’s four pending cases in the State of Connecticut was finally disposed of. Accordingly, defendant did not become a sentenced prisoner for purposes of the Interstate Agreement oil Detainers until September 3, 1987, at which time the 180-day clock began to run; thus, defendant is correct solely to the limited extent that the 146-day period from September 3, 1987 until defendant’s release on appeal bond from the Connecticut Correctional Institute on January 27, 1988 is properly chargeable to the People. However, it is equally clear that since defendent’s Connecticut sentence actually expired in January of 1988 (the two-year sentence subsequently having been modified to 10 months), the Interstate Agreement on Detainers no longer applied following defendant’s release from custody on January 27, 1988. (See, United States v Roy, 830 F2d 628, 633 [7th Cir 1987], involving, it appears, the same defendant who was the subject of the earlier 1985 Second Circuit decision in United States v Roy, 771 F2d 54, supra, cert denied 475 US 1110.)
Thereafter, as per the stipulated set of facts, defendant was subsequently rearrested in the State of Connecticut (Berlin, Connecticut) on May 13, 1988 and again, in Southington, Connecticut, on June 7, 1988. It is further stipulated that the Southington charges were still pending at the time defendant was ultimately produced in Westchester County on October *90 26, 1988. Therefore, once again, under the reasoning of Vrlaku (supra), and assuming arguendo that defendant’s May 4, 1987 request for disposition under the Interstate Agreement on Detainers is deemed to be a revived or continuing request, the Interstate Agreement on Detainers would also be tolled during the period of time from May 13, 1988 to October 26, 1988, during which time at least 1 of the 2 new Connecticut charges were pending against the defendant.
Therefore, the court would find only 146 days of the period from defendant’s request of May 4, 1987 to his eventual production in Westchester County on October 26, 1988 (see, People v Vrlaku, 134 AD2d 105, 111 [2d Dept 1988]) chargeable to the People and, therefore, defendant’s application to dismiss the instant indictments for violation of the 180-day rule contained at CPL 580.20, article III is hereby denied.
Defendant next contends that his right to a speedy trial was denied under CPL 580.20, article IV (c), which provides, inter alia, that the trial of the prisoner "shall be commenced within one hundred twenty days of the arrival of the prisoner in the receiving state”. Defense counsel, in his supporting affirmation dated December 1, 1988, further states that the 120-day period may be extended to 150 days by virtue of adding the 30-day period set forth at CPL 580.20, article IV (a). The court’s research reveals no such authority extending this time period to 150 days. (See, i.e., People v Lambert, 92 AD2d 550 [2d Dept 1983], affd 61 NY2d 978 [1984].) In any event, whether the latter period is deemed to be 120 days, or as counsel (incorrectly, in this court’s view) contends, 150 days, the point appears to be entirely academic in the context of the instant case. Defense counsel herein brought on his omnibus motion on December 1, 1988. The court, following full submission of the application, ruled on defendant’s application by way of a written decision and order dated January 10, 1989. Clearly, the entire 41-day period from December 1, 1988 to January 10, 1989 is therefore properly excludable. (See, i.e., United States v Roy, 771 F2d 54, 59, supra [1985], citing CPL 580.20, art VI [a].) That being the case, only 94 days are properly chargeable to the People from the date defendant was actually produced in Westchester County on October 26, 1988 until the *91 date the instant stipulation, in lieu of a hearing, was entered into in open court, i.e., March 9, 1988. Therefore, defendant’s application to dismiss the instant indictment under CPL 580.20, article IV (c) is also denied in all respects.
Accordingly, defendant’s application to dismiss under the Interstate Agreement on Detainers is hereby denied in all respects.

. Subsequently modified to 10 months, as per stipulation.

. This court has also received defendant’s "annex to supplemental affirmation” dated March 12, 1989, which, for simplicity’s sake, the court will deem to have been submitted by counsel on defendant’s behalf. Defendant’s reliance therein on People v Pellegrino (131 Misc 2d 118 [Sup Ct, Westchester County 1986, Colabella, J.]) is, in this court’s view, misplaced in that the delay therein was simply due to "bureaucratic misfeasance”; no legal issue as to the effect, if any, of other matters pending in the sending State was involved.